# SAMUEL M. WOODSON

*v.*

# LEE H. VENDIG.

Equity, No. 173.

1. When two persons enter into partnership as selling agents for wholesale houses, and possess no property in common save the commissions on the sales, and one of the partners, who had this business established before he entered into partnership with the other, ascertains that the latter misrepresented his capacity as a salesman to him, the former may break a time contract of partnership without being obliged thereafter to divide the profits accruing from his own subsequent labor up to the end of the time of the contract of partnership.

2. For the peculiar facts of the case, see the following opinion.

Opinion filed February 6, 1909.

*Mr. N. B. K. Pettingill,* attorney for complainant.

*Mr. Willis Sweet,* attorney for respondent.

Rodey, Judge, delivered the following opinion:

This cause has been on the docket for more than six years. The original bill was filed on November 24, 1902, its object being to settle an alleged partnership, and have a receiver appointed to take charge of the business. The then incumbent

of this bench denied the application for a receiver, as appears by an opinion filed November 28, 1902. On April 24, 1903, a supplemental bill was filed so as to include an accounting up to the first of May, 1903.

Much additional pleading was indulged in as the years passed, and the matter was at one time referred to a master to determine whether certain paragraphs of the answer of the defendant, which were excepted to, were impertinent and ought to be stricken out. The case was also referred to a master to take the proofs, but none were ever taken, and the reference was recalled. Finally, on December 29, 1908, a full hearing was had before the court itself, when all the oral proof was taken and exhibits introduced. Briefs were then filed by both parties.

It is not often that such a peculiar case is encountered. The facts established by the proofs are about as follows: The respondent, Lee H. Vendig, had been in Porto Rico two or three years as agent for different commercial houses in the United States, selling their goods on salary at first, and later on commission. In January, 1902, the complainant, Samuel M. Woodson, who had been for some ten years previous to that time in the employ of the Armour Packing Company, and for some time immediately previous had been assistant general manager of their foreign export business where all their sales are made by cable, and who had no other sort of experience as a salesman, came to Porto Rico to check up the business of Vendig on the island, and look things over, and to go to Jamaica and other places in the interest of his concern. He found Vendig here with an established commission business. It is not certain just how it arose, but the two men got together to form a partnership

in the commission business in Porto Rico, and Woodson agreed that he would join Vendig, if, after he returned to Chicago or wherever he lived, his wife would come back with him. A few months later he came back with his wife and mother-in-law, and a partnership contract for a term of five years was entered into between the parties, at least, in so far as the contract which they wrote out could make it. Mr. Vendig seemed not to recollect this contract, but the original of it is in evidence and is signed in the unquestioned handwriting of 'ioth men. It is as follows:

It is hereby agreed by the undersigned (Lee H. Vendig and Samuel M. Woodson) that, for a period of five years from the date of this paper, they form a partnership for the purpose of selling merchandise on commission. All profits resulting from this partnership, and all losses and expenses, are to be equally divided between them.

This contract does not apply to real estate investments made by either one of the undersigned, unless specially covered by separate contracts.

It is also agreed that if either party desires to withdraw from this agreement during the period of the contract, they are at liberty to do so, but it is understood that the party withdrawing is not to engage in a similar business in the island of Porto Rico without the written consent of the other party.

Signed, Lee H. Vendig.

Signed, S. M. Woodson.

San Juan de Puerto Rico.

Effective on all sales rendered from May 1st, 1902, with exception of rice. On the latter from May 8th.

Woodson v. Vendig.

The evidence of Woodson is that they proceeded to business under this five-year contract, and that, during the summer, Mr. Vendig, being dissatisfied with it, induced Woodson to change it for a one-year optional contract that is now sued on, which is as follows:

May 1, 1902.

It is hereby agreed by the undersigned (Lee H. Vendig and S. M. Woodson) that they form a partnership for the purpose of selling merchandise on commission. All profits resulting from this partnership, and all losses and expenses, are to be equally divided between them.

This agreement to be in force for one year from date, on all products with the exception of rice, and on rice it is to be in force from May 8, 1902, and to continue indefinitely from year to year until mutually dissolved, three months' written notice to be given by the party retiring.

Each member is to be entitled to three months' vacation each year, if they see fit to take it, such vacations to be taken at an advantageous time, so as to result of the least possible loss to their mutual welfare, and in no event, unless in case of sickness, will they prolong this period of vacation.

Signed, Lee H. Vendig.
Signed, S. M. Woodson.

Vendig denies that he ever entered into the first contract above mentioned, but Woodson insists that he did, and produced the original contract, which, as stated, is unquestionably signed by Vendig.

They proceeded to business, which was virtually simply continuing the business that Vendig had already thoroughly es-

tablished, and under the same name. In a month or two Vendig went to the States for a vacation. He testifies that while he was there, one of the houses he was agent for communicated with him in New Jersey, where he was stopping, and informed him that there was difficulty about the delivery of several lots of rice here on the island, and, as Vendig claims, this house obliged him to come down here at once and attend to the matter himself, which he says he did, and that it took two or three weeks to settle a matter that a competent partner could easily have settled himself. Matters went along in this way, Vendig stating that he soon ascertained that Woodson was a man without experience, and wholly incapable of adding anything to the established business, or taking care of it in his absence, and that complainant was not an experienced salesman, such as he had given respondent to believe when he entered into negotiations with him, so, on October 22d of that year, Vendig sent him a letter intended to end the contract and dissolve the partnership, a copy of which is in evidence, reading as follows: "By this I hereby notify. you that, on December 1st, 1902, our agreement entered into on May 1st, 1902, for the purpose of selling merchandise on commission, etc., shall be dissolved."

Six days before that time this suit was brought by the complainant. Thereafter, in December some time, an accounting was turned in for the months of October and November, showing half of the net profits to be $527.28 for those months, but deducting from it $300 which Vendig claimed the right to charge against Woodson for half of an attorney's fee in this suit of Woodson against him, which he fixed at $200, and $100 for services in adjusting accounts on shipments made and not delivered until after December 1; traveling and other sundry expenses. And so Vendig tendered into court $227.28 as the

Woodson v. Vendig.

amount due the complainant, which is still in the registry.  Recently, before the final hearing, the defendant substituted his counsel, and the new solicitor came in and tendered an amended answer and a cross bill; but the court refused to permit it to be filed, on the ground that the case was so old that it would be better to hear the proofs and decide it on the merits on the pleadings already in.  See the court's memorandum and order filed December 22, 1908.  By this same memorandum the court ordered Vendig to be ready on the day of the trial with a complete accounting of this alleged partnership business, which he brought in and introduced in evidence.  It showed a profit on the business as conducted by himself after December 1, 1902, to the first of May, 1903, of $3,345.47.

Counsel for complainant now in his brief claims a judgment against respondent:

For the full net profits for October and November, belonging to complainant...................... $   527.28

And for half of the net profits from December, 1902, to April, 1903, inclusive, $3,345.47÷2......   1,672.73

                                                              _____

                                                               $2,200.01

Interest on same from May 1, 1903, to December 31, 1908,—5 yrs., 8 mos. at 6 per cent..........      748.00

                                                              _____

Due at time of decree ...................... $2,948.01

Less amount deposited in court...............      227.28

                                                              _____

                                                               $2,720.73

Or, allowing some leeway in interest, $2,700, even.

Woodson v. Vendig.

After Woodson received the notice from Vendig attempting to end the contract or dissolve the partnership, the evidence is that he remained in the business until the 1st of December, and, as Vendig says, attended to his own correspondence, and, as he says, attended to anything there was to do in the office. But certain it is that Woodson left the office on December 1st and immediately started a similar commission business of his own in the same building, and later went into partnership with somebody, but he contends that he did not make enough to pay expenses until after the 1st of May following. Vendig went on with the business and has continued with it until this day, the same as it was before, in his own name. It seems that Woodson has made a success of his business also, and several merchants testified that they have dealt with him ever since he started in business. Vendig appears quite bitter against Woodson, but the latter contends that he has no hard feelings toward the former.

The grave question that confronts us is this: Here was an established business that Vendig had. He certainly made this contract with this man, and only one of two things can be true; either he got sorry for having made it, and desired to get out of it, or else he really did find that the complainant was of no service and no use to him. In fact, he testified that complainant did nothing but smoke cigarettes, sit in the office, and write a little correspondence three hours a week on mail days, and that for this, he, Vendig, as he says, had to support complainant and his family and give him one half of the net profits of the business, which half then probably amounting to about $300 a month. Vendig further testified that he entered into the contract so as to establish a branch house at Ponce, but there

Woodson v. Vendig.

is no evidence in the case to show why that house was not established, except that Vendig ascertained that Woodson was not competent as a salesman and added nothing to the business. While Vendig was in the States, in the summer of 1902, Woodson claimed that he made a few sales of flour and rice; but Vendig insists that those were orders coming to the office in the regular course of business from customers that he, Vendig, had on his books at the time. The firm possessed absolutely no property of any kind. It was purely a question of personal services of each. The commissions made were divided; that was all there was to it. It was not like other business ventures, where large stocks of goods are purchased and kept on hand, and where each partner has title to the property. Here it was a simple question of selling goods on commission and dividing the profits. Woodson did not own 10 cents' worth of anything in the business. He brought nothing to it. It gained nothing by him. Counsel for respondent insists that, under the Porto Rican law, that is, the local code of commerce, there was in fact no legal partnership entered into at all between the parties. We think he is right in this as to third parties, but the contract itself says that it is a partnership. By its very terms they say: "We have formed a partnership for the purpose of selling merchandise on commission." It is therefore, we think, good as a contract of partnership between themselves. It is further contended that even though there was a contract of partnership between them, the consideration for entering into it, moving to Vendig, was the representations of Woodson that he was a competent salesman, which Vendig testified he found out shortly thereafter was not the fact.

Complainant insists that he is properly in court, and that

Woodson v. Vendig.

the law obliges a chancellor in this sort of a case and on these facts to say that, as matter of law, Vendig did not, and could not, break that contract and dissolve that partnership until the expiration of one year after its date; and that he must, if he excluded Woodson from his office, continue to pay him more than $300 a month until that time, even though the money earned was the result of Vendig's own effort on a business that he had himself previously established.

Both counsel cite us to the great case of Karrick v. Hannaman, 168 U. S. 328, 42 L. ed. 484, 18 Sup. Ct. Rep. 135, and counsel for complainant contends that it establishes a doctrine which is binding upon this court,—that one partner cannot dissolve a partnership which is for a definite time, or that, if he excludes the other partner from the business, he is bound to respond to him for the profits, etc. We have read that case carefully, and if it establishes anything, it establishes the principle, or, at least, the court refuses to deny that such is the law, that a partner, at least, in many instances, may break a contract of partnership before the time limit, and take possession of the property and place of business; but that such partner may be subject to an action at law for damages for so doing; not to a suit in equity for an accounting and a receiver, as is contended. In that case Mr. Justice Gray goes into the question of this sort of a partnership elaborately, and demonstrates that there is no hard and fast rule upon this subject, and that each case must stand upon the equities connected with itself. The opinion in the court below (9 Utah, 236, 33 Pac. 1039) is also profitable reading. That case, while it is the one most nearly approaching the one at bar that has been called to our attention, had facts and circumstances connected with it showing

that the complainant there had title to the goods and to a plant belonging to a mercantile and laundry business; and, of course, the other partner, although he had vastly the more money in the concern, could not arbitrarily shut the complainant out without accounting to him. Not like, as in this case, which is practically a contract of a personal nature, where each is to render his services only. In the case at bar the brief of counsel for complainant shows the difficulty he has had to reason out the complainant's right to recover at all.

If we had been on the bench when this suit was first filed, we would have held that there was not $1,000 involved, and therefore that this court had at that time no jurisdiction because of the amount involved being less than the statutory jurisdictional amount; and we would further have held that the action, if any, in favor of Woodson, was one strictly at law for damages, which a jury could fix for him.

Notwithstanding the evidently confident argument of counsel for complainant that his client is entitled to a judgment as claimed, yet, under all the circumstances of this case, our conscience revolts at the idea of being forced, as a chancellor, to put our hand in Vendig's pocket and abstract therefrom $2,900 of what we feel is his own personal earnings, and turn the money over to the complainant, in addition to the $2,100 or more which Woodson has already, or by this decree will have, received of Vendig's money, the profits of what we consider the latter's own established business, and the result of his own personal efforts as a salesman, without the complainant, as we think, giving any adequate or reasonable value therefor. Such is not the law, in our opinion, and we refuse to do it. We say this with all due respect for the very able argument of the

Woodson v. Vendig.

learned counsel for Mr. Woodson. We cannot agree with him in his contention in this case. The citations he gives will not, in the last analysis, under facts like these, bear the construction he maintains for them. The business was Vendig's. It was an established and going concern in so far as personal services could make it a going concern. Woodson's advent on the scene added nothing to the business. He owned no property of any kind connected with the business. There was no stock in trade, and we cannot see why Vendig did not have the right to end their relations as he did, on finding that he had been misled as to the qualifications of complainant as a partner.

As this suit is in equity, we will and do hold and find that the consideration moving to Vendig after entering into the agreement failed, and that he had a legal right to end the relations of the parties on the 1st of December as he did. But we further hold that, as he did make this bad bargain, and did not sooner terminate the contract, he was in duty bound to pay the amount then due to complainant without deduction, that is, $527.28; and therefore a decree or judgment, whichever may be proper, will be prepared and entered for that amount for the complainant with costs. It is our belief, as both counsel, by their silence on the question of jurisdiction, seem to acquiesce in it, that this is a better mode of disposing of the case than to dismiss it and force complainant to sue at law, as we would have done had we been on the bench when it was first filed.