## HENDRICKS v. HENDRICKS.

No. 5629.   Decided December 29, 1936.   (63 P. [2d] 277.)

*Thatcher & Young,* of Ogden, for appellant.

*Irvine, Skeen & Thurman,* of Salt Lake City, for respondent.

CHRISTENSEN, District Judge.

On July 28, 1930, the district court of Salt Lake county entered its decree of divorce in favor of plaintiff; awarded her custody of the two minor children (Afton, aged eleven, and Bonne, aged eight) ; and also awarded to her the home in Salt Lake City with all furnishings; required defendant to pay all taxes and assessments then outstanding or thereafter to accrue on said home, and awarded her the further sum of $125 per month for the support of herself and the two children until the youngest daughter reaches the age of twenty-one years, and thereafter $75 per month; and required defendant to pay to plaintiff's attorney $100 and pay the costs incurred by plaintiff.

On December 19, 1932, defendant filed in said court a petition for modification of said decree upon the ground that because of changed conditions since the entry of said decree he was no longer able to comply with its terms. An order to show cause was issued and served upon plaintiff. She filed answer joining issue as to the alleged changed condition. On September 8, 1933, plaintiff filed an affidavit alleging defendant was in arrears in the payment of alimony, and asked that he be adjudged in contempt of court. An order to show cause was issued and served on defendant. By stipulation, both matters were heard together on January 4, 1934.

There was no dispute in the evidence. Aside from the question of attorney's fee, the defendant was the only witness who testified. On the issues as made, his evidence disclosed the following facts: He was in arrears in payment of alimony as of December 10, 1932, when his petition for modi-

fication was filed, in the sum of $690.30. On September 1, 1933, when the citation was issued, he was in arrears $1,-407.10 On January 1, 1934, at the time of the hearing, he was in arrears in payment of alimony in the sum of $1,-614.37. There were unpaid taxes and assessments on plaintiff's home for the year 1933 in the sum of $206.79.

It is to be observed that more than a year elapsed from the time of the filing of the petition for modification until the hearing. This delay was occasioned by efforts which were being made by the parties to compose their differences.

Defendant is a dry farmer, thirty-nine years old, and resides at Blue Creek, Box Elder county, Utah. He owns about 1900 acres of dry land, of which 1500 is tillable. He plants one-half each year to fall grain and produces (except in dry years or when losses from frost occur) approximately 20,000 bushels a year. He also owns an irrigated farm of 69 acres located near Tremonton, Box Elder county, Utah. He owned all of this property at the time of the entry of the decree in 1930 at which time all of this property was heavily mortgaged. Because of prevailing prices for farm commodities, he was able to take care of his annual payments, taxes, costs of production, and alimony. In the fall of 1929, his grain sold for $1.10 a bushel. After his 1930 crop was harvested the price of wheat went down as low as 65 cents and thereafter continued to go down until by 1933 it got to as low as 26 cents a bushel.

At the time of the entry of the decree of divorce, his principal debts, all of which were secured by mortgage, may be summarized as follows:

|  | (About) |
|---|---|
| Federal Land Bank of Berkeley | $ 7,000.00 |
| Federal Land Bank of Berkeley | 6,400.00 |
| State of Utah | 2,800.00 |
| Thatcher Brothers Banking Co. | 11,000.00 |
| Pacific Joint Stock Land Bank | 5,000.00 |
| J. H. Luke | 4,500.00 |
| Total | $36,700.00 |

In addition to this, he was also liable as an indorser on notes with his brother, Guy, in the sum of $2,400, making a total indebtedness (without counting minor obligations) of $39,100. His annual payments which had to be made out of the produce of his farm included payments of interest on loans, taxes, expenses for gasoline, and labor, totaling approximately:

|  |  |
|---|---|
|  | $5,222.00 |
| To which amount must be added, alimony | 1,500.00 |
| Taxes and assessments on plaintiff's home | 206.79 |
|  | $6,928.79 |

From his crop he had to deduct at least 1,000 bushels a year for seed and had to maintain his farm and farm machinery. With the price of wheat dropping from $1.10 to 26 cents a bushel, it was physically impossible for him to keep up his payments, with the result that at the time of the hearing he was in default with the Federal Land Bank for approximately two years, with the state of Utah and the Pacific Joint Stock Land Bank, for taxes three years and one year for taxes on plaintiff's home, and in default on plaintiff's alimony more than $1,600, and all of his property as well as his crops were mortgaged.

This evidence related to the two issues raised by the defendant's petition for modification of the decree, to wit: (1) The issue as to any substantial change of the defendant's condition since the entry of the decree of divorce; and (2) the issue as to the defendant's ability to comply with the terms of the said decree. The first of said issues is also presented in the answer and return of the plaintiff, and the second of said issues is met by the allegations in the plaintiff's affidavit wherein she alleges that the defendant is in arrears in the payment of alimony, although financially able at all times to comply with the terms of said decree, and asks that he be adjudged in contempt of court.

All other allegations as to the decree, the amount of accrued alimony in default, the allegations of the plaintiff's affidavit

as to the necessity for the payment of this alimony for the support of herself and children, were admitted, except that in defendant's petition for modification he alleges that as a result of the reduced prices the cost of living has been greatly reduced, and that plaintiff and her two children can now live comfortably on the sum of $50 a month, the amount to which the defendant prays that the monthly alimony may be reduced.

The defendant's bill of exceptions contains fifteen assignments of error, but these may well be reduced to two questions: First, the sufficiency of the findings; and, second, the validity of the conclusions and orders based upon these findings. It is well settled in this court that in order to secure a change in a decree for alimony, the moving party must allege and prove changed conditions arising since the entry of the decree which would require, under the rules of equity and justice, a change in the decree. *Chaffee* v. *Chaffee,* 63 Utah 261, 225 P. 76; *Rockwood* v. *Rockwood,* 65 Utah 261, 236 P. 457; *Hampton* v. *Hampton* 86 Utah 570, 47 P. (2d) 419. It is likewise well settled in this state that where the appeal is on the question of the propriety of the judgment for alimony, this court is required to review the evidence in the nature of a trial de novo on the record, and the appellant is entitled to the judgment of this court, as well as the trial court, on this question. *Dahlberg* v. *Dahlberg,* 77 Utah 157, 292 P. 214; *Openshaw* v. *Openshaw,* 80 Utah 9, 12 P. (2d) 364; *Hampton* v. *Hampton,* supra.

It has further been determined by this court, as shown in the above cases, and cases therein cited, that it is not necessary for this court to find a gross abuse of discretion on the part of the trial court before modifying the judgment as to alimony and that no general rule as to the amount of alimony can be laid down to follow in all cases, but the decree in each case must be determined upon the facts, the conditions, and the circumstances of the parties in each particular case, and that if, upon exami-

nation of the record, this court is convinced that the award in the trial court is inequitable and unjust, it should direct such decree as it finds to be just and equitable. The amount of alimony is measured by the wife's needs and requirements, considering her station in life, and upon the husband's ability to pay.

If we examine the evidence, which has in substance been set out herein, with the decisions of this court and the rules thereby established, as shown in the cases above cited, in mind, it would appear that the finding of the trial court that "no substantial change has been made in the financial condition of the defendant adverse to him or his property holdings since the date of the decree entered herein, except as affected by the change and reduction in the market price of dry land wheat," is inconsistent within itself in that the latter part of said finding, in the light of the evidence, contravenes and disproves the first part of the finding.

The evidence in the case shows that the change and reduction in the market price of dry land wheat did affect the financial condition of the defendant adversely. The losses suffered by reason of such change and reduction in the market price of dry land wheat may be summarized as follows: Defendant's acreage of tillable wheat land was 1,500 acres, one-half of which he planted each year. If we consider as a fair average yield 20 bushels an acre, as the defendant himself testified and which testimony was not contradicted, he would have 15,000 bushels, which he sold in the fall of 1929 for $1.10 per bushel, bringing $16,500. The 1930 crop was sold at a price of 65 cents which would bring $9,750, a loss from the price of wheat when the decree was entered of $6,750. By 1933 the price got as low as 26 cents a bushel. If we for that year deduct the 15 per cent of tillable land which was left fallow and take the yield of 20 bushels an acre, we would have 12,750 bushels which, at 26 cents a bushel, would yield $3,315, to which may be added the federal allotment of $2,200, a total income of $5,515, showing a loss of $10,985, or a total loss of $17,732 for two years by

reason of the fall in price from $1.10 at the time the decree of divorce was granted.

The said finding, therefore, is erroneous and cannot be approved by this court, and since the issue so found upon is vital to the consideration of defendant's petition for modification, to so find would be reversible error. ■ There were other errors assigned relating to the findings of the court, but since the first question is conclusively disposed of by the ruling of the court upon the above finding, they will not be further considered.

Adverting to the second question raised by the assignment of errors: The validity of the conclusions and orders based upon these findings. We will first consider the order denying and dismissing the defendant's petition for modification of the original divorce decree. The said order is based wholly upon the following grounds: That defendant is the owner of approximately 1,900 acres of dry farm land in Box Elder county, Utah, of which approximately 1,500 acres are tillable; that said land is under mortgage to the state of Utah and the Federal Land Bank; that no substantial change has been made in the financial condition of defendant adverse to him or his property holdings since the date of the decree entered in the cause, except as affected by the change and reduction in the market price of said dry land wheat; that defendant has received, during the pendency of the motion for modification of the decree, by way of wheat allotments from the Federal Government, upwards of $2,000, no part of which has been or was paid to plaintiff on account of alimony now due and in arrears; that at the time of the hearing of this petition, the defendant was in arrears in alimony accruing under the terms of the decree entered herein in the total sum of $1,614.37, which amount was by the terms of said decree due and payable prior to the 1st day of January, 1934.

The evidence of defendant disclosed the following facts with relation to his compliance with the provisions of the decree of divorce of July 28, 1930: That on December 10,

1933, shortly before the defendant filed his petition for modification, and nearly two and one-half years after the entry of the divorce decree, there had accrued over $3,500; the defendant was in arrears $690; so that during the said period he must have paid approximately $2,900 in alimony. It is true that after that date, the amount for which defendant was in arrears constantly increased, but since the trial court stated in the course of the trial that, "The order to show cause, of course, is only up to the time that the order is signed," we may well assume that the court took the same attitude with respect to the time when the petition for modification was filed. At the time of the filing of the said petition for modification, defendant had suffered serious losses, as we have shown, but he had held onto his property as best he could, and borrowed all that it was possible to secure upon the life insurance which he carried, but was finally forced to let it lapse, and, as he testified, had been operating the said farms at a substantial loss annually and was in defult in his payments to the Federal Land Bank, to the state of Utah, and to the Pacific Joint Stock Land Bank, for three years' taxes upon the farms, and for one year's taxes upon plaintiff's home; and all of his property, as well as his crops, were mortgaged and in grave danger of being foreclosed upon and lost to him. He further alleges in his said petition for modification that as a result of the reduced prices, the cost of living had been greatly reduced, and that the plaintiff and her two minor children could at that time live comfortably on the sum of $50 a month. This allegation was inferentially denied in the answer of plaintiff to said petition. (This question the defendant had no opportunity to verify and the court made no findings thereon.)

The findings with respect to the allotments from the Federal Government are not herein considered in connection with the order denying the modification of the decree, the same having been received just a few days before the trial, but will, however, be dealt with in this opinion in connection

with the order made by the court finding the defendant in contempt and sentencing him to jail.

The evidence shows conclusively that a material and substantial change had taken place adverse to defendant and his property. That the efforts of defendant to comply with the decree of the court shown in his paying more than $100 a month of the alimony, imposed during the entire period which had elapsed since the decree was entered, would be a sufficient showing to entitle him to some consideration on the part of the court of his petition for modification, and that the findings and the evidence are insufficient to justify the order denying and dismissing the said petition for modification of the decree.

In respect to the order of the trial court finding the defendant guilty of contempt and imposing upon him fifteen days' imprisonment in the county jail of Salt Lake county, the following points should be considered in addition to the observations already made with respect to the order denying the petition for modification of the decree. The said order of the trial court was based upon the following findings: That there was due January 1, 1934, as accrued alimony, the sum of $1,614.37; that defendant was the owner of approximately 1,900 acres of dry farm land in Box Elder county, Utah, and approximately 1,500 acres of the said land was tillable and being farmed by him; that the said land was under mortgage to the Federal Land Bank and to the state of Utah; that defendant owned farming machinery and equipment sufficient to farm said land, and had been since the entry of said decree engaged in farming the said land and raising crops thereon; and that the financial condition of the defendant was substantially the same as existed at the time the said decree was entered, except as the market price of wheat had changed since 1931; that defendant had received and marketed his crops from the said land during 1933, and had received, during the pendency of the citation and the order to show cause, approximately $2,000 by way of wheat allotments from the United States Government; that plaintiff

was, by the decree, awarded the custody of the two minor children and owned a home and furniture in Salt Lake City, which had also been mortgaged by plaintiff at the instance of defendant and $2,900 of the money borrowed thereon had been by plaintiff loaned to defendant without security, and defendant had not repaid the same or any part thereof, except interest; that plaintiff had no independent income or means of support except occasional uncertain employment; that plaintiff did not have money with which to employ an attorney; and that $100 was a reasonable attorney's fee to be paid by defendant to plaintiff's attorney, D. A. Skeen, $50 of said sum on account of defending against defendant petition for modification of the decree and $50 for representing plaintiff's petition for an order to show cause on the payment of alimony.

From the foregoing findings, the court concluded that defendant is guilty of contempt for willful failure and refusal to comply with the orders and conditions contained in the decree entered herein, and it is ordered that defendant be committed to the county jail of Salt Lake county for a period of fifteen days. The court further ordered that the said sentence of imprisonment be suspended upon the consideration of certain payments, but specifically holding that the monthly amount of alimony to be paid by defendant to plaintiff, of $100 a month, payable as in said decree specified, is not by this order in any manner altered or modified.

These findings are, in the judgment of this court, insufficient to justify the peremptory order committing defendant to the county jail for a period of fifteen days, and said order should be set aside.

It further seems that the court was caused, on its own motion, to conclude the proceedings and announce that it would enter the two orders from which this appeal is taken by reason of the statement made by defendant toward the close of his testimony that he had received $2,200 in wheat allotments and applied $2,000 thereof on his debts in order to appease his creditors. Upon this point defendant testified

that he tried to get them to take the property, but they threatened to take deficiency judgment against him and cause him, not only to lose his property, but also burden him with a large deficiency judgment; that these creditors were right at the bank door when he came to get his allotment money and he believed they would ruin him if he did not make them this payment.

The order of this court, therefore, is that the judgment of the lower court denying and dismissing the petition for modification is reversed; and since conditions have very materially been changed since the trial of this action, the cause is remanded to the district court of Salt Lake county for a new trial in which the present conditions may be considered and such judgment and decree made as may be just and equitable between the parties under the conditions which now obtain.

And it is hereby further ordered that the order of the trial court committing the defendant to the county jail of Salt Lake county for a period of fifteen days be, and the same is hereby, vacated and set aside.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

WOLFE, J., being disqualified, did not participate herein.