## ALLEN v. ALLEN.

No. 6843.    Decided February 11, 1946.    (165 P. 2d 872.)

See 27 C. J. S., Divorce, sec. 288; 17 Am. Jur., 491.

*White, Wright & Arnovitz,* of Salt Lake City, for appellant.

*Allen G. Thurman,* of Salt Lake City, for respondent.

TURNER, Justice.

Early in 1941 Dr. Moore Lowry Allen commenced a divorce action against Anna Hunt Allen in the District Court of Salt Lake County. Mrs. Allen filed a cross-complaint asking for a decree of separate maintenance. On August 16, 1941, a decree was entered against the doctor and in favor of his wife granting her $150 a month for the support of herself and minor children. On January 14, 1942, Mrs. Allen filed a petition asking that the allowance be increased. This request was denied. On July 12, 1944, plaintiff commenced this action against her husband seeking a divorce. She prayed for $500 a month alimony and an equitable division of the defendant's property and for $1000 to cover suit money and attorney's fees.

The trial court, after hearing the evidence and arguments of counsel, made and entered its judgment in favor of the plaintiff, granting her a divorce, alimony in the sum of $275 a month, the sum of $125 for payment of her dental bill, $500 for attorney's fees, and ordered and decreed that defendant should make plaintiff the beneficiary in a life

insurance policy then in force in the principal sum of $10,-000, and which at that time had a cash surrender value of approximately $1600, and providing further that neither party should withdraw the cash surrender value but that defendant should make the premium payments required under the policy; that in case the plaintiff should remarry while defendant was still living she would relinquish all right and interest in the said insurance policy. The court's decree granted plaintiff further relief relative to minor matters.

This is an appeal from certain provisions of the decree. Respondent cross-appealed. His contentions go primarily to those provisions of the decree which do not satisfy plaintiff. In substance, Mrs. Allen complains that she is not given sufficient property and alimony; the doctor contends that the decree provides too much. The appellant assigns as error the court's failure to award her part of the property of defendant, or its cash value, other than that given her in the decree; that the amount of alimony granted is insufficient in view of all the circumstances and especially in view of the earning power of defendant; and that the court erred in refusing to reopen the case so as to allow plaintiff the opportunity of submitting additional evidence.

Plaintiff and defendant were married to each other on June 23, 1920. That fall respondent began the study of medicine in Baltimore, where he remained for two years. He then went to the University of Pennsylvania from which he graduated in 1924. From graduation until the fall of 1926 he served as an interne in hospitals in Philadelphia. In the fall of 1926 he returned to Salt Lake City and was employed by the Intermountain Clinic. In September, 1927, he went to Carbon County to engage in his profession. He remained in Carbon County until September, 1931, when he returned to Philadelphia for specialized training in roentgenology. He pursued this study until 1933 when he entered the employment of the Episcopal Hospital as the head of its X-ray department. He continued in that employment until September, 1939, when he returned to Salt

Lake City for the purpose of entering into the practice of his specialized field of medicine. He opened his offices in the Judge Building in March, 1940.

From the time the Allens were married until early in 1927 they lived together. In April, 1927, appellant sued for a divorce. This was granted but a reconciliation was effected and the decree was set aside. The Allens and their children lived in Carbon County from 1927 until the doctor went east to specialize. They lived together as a family in Pennsylvania until January, 1935, when plaintiff and defendant had further differences and then they separated and have never lived together since. After they separated in 1935, Mrs. Allen brought an action against the doctor asking for separate maintenance. On May 13, 1935, she was awarded $175 a month for the support of herself and her two children. In July, 1935, she moved to California, and in the summer of 1936 the doctor went to California and induced her to return with the boys to Philadelphia. She returned but lived separate and apart from him. Shortly after her return to Philadelphia she brought a proceeding against the doctor whereby the allowance for separate maintenance for herself and the boys was increased to $225 a month. In the summer of 1937, because of efforts of the doctor and his family to bring about a reconciliation, Mrs. Allen came to Salt Lake City and lived with the doctor's mother. In the summer of 1938, she returned to Philadelphia where she lived with her children until the fall of 1939 when she again returned to Salt Lake City.

During the early years of their marriage the defendant spent most of his time in study. His means of support for himself and family were limited. When he returned to Salt Lake in 1926 he was employed at $300 a month. After going to Carbon County he was able to save a little money to use for specialization but had acquired no property. The doctor succeeded in providing for his family and paid for his educational expense by his own efforts augmented by some help from home. When he was employed by the Episcopal

Hospital he was paid $433 a month or approximately $5200 a year.

It should be remembered that in 1935 when her boys were thirteen years of age, Mrs. Allen was awarded $175 a month for the support of herself and the two boys. In 1937, after returning from California, this allowance was increased to $225. To justify this she undoubtedly was able to show that there had been a change of circumstances after the first order was made and entered. After they returned to Salt Lake and the doctor was working to establish a practice, when the boys were approximately nineteen years of age, the court granted Mrs. Allen separate maintenance and allowed her $150 a month. Although she sought to have this allowance increased in January, 1942, she was unable to do so.

The record shows that after January, 1942, circumstances of the parties changed considerably. The trial court found, and the findings in this regard are supported by the record, that in 1941 the doctor's net income, prior to payment of income taxes and alimony payments, was $5,399.17; for 1942, $7,008.80. For this year he paid taxes in the sum of $914.12 and alimony paid amounted to $2,410.63. For 1943 the income was $9,481.81. Taxes amounted to $2,067.73 and alimony paid was $2,671.01; and in 1944 the doctor's net income was $17,314.25, taxes were $6,154.50 and alimony amounted to $2,967.11. The court valued the property of the defendant at $10,550, including the $1600 cash surrender value of the insurance policy. The evidence discloses that the defendant after returning to Salt Lake spent approximately $15,000 for equipment. His business expense averaged more than $6,500 a year for the years 1941 to 1944, inclusive.

On the other hand, plaintiff in addition to alimony paid her, received approximately $100 a month from her two sons who were in the service, one in the Air Corps and the other attending the Medical School of the University of Utah. The boys were of age when the trial court made and entered its judgment. The evidence also shows that Mrs. Allen had been working part time and had been earning approximately

$80 a month. She contends that the money from the boys is temporary and that her ability to earn is also temporary. She maintains that the labor shortage is over or would be soon after the close of the war. Opposing this, the defendant insists that his great increase of earnings has been due to conditions caused by the war; that because of the war there has been a scarcity of doctors and but for the war and the urgent need of his services he would not have attempted to have done the great amount of work he did.

We think there is merit in these contentions. It is quite evident that the trial court gave these matters consideration in forming its conclusions and in making and entering its decree. Of the appellant's three assignments of error, two are so closely related that we shall discuss and determine them together. They present this question: Under the facts and circumstances of this case should this court upset the trial court's findings and decree relative to alimony and division of property?

When should the appellate court in divorce proceedings vacate the findings and decree of the trial court and substitute its judgment for that of the judge who observed the demeanor of the parties and witnesses and heard the testimony, when the appeal relates only to the determination of alimony and division of property?

We shall turn our attention to the other assignment of error before attempting to answer the problems just presented. This assignment is that the trial court erred in refusing to reopen the case so as to allow the plaintiff an opportunity to present additional evidence. ■ If the court arbitrarily refused to entertain evidence which would have made the premises for its judgment fundamentally different and the facts established would have been so much more favorable for the plaintiff that consistency would have required a different judgment, then the court erred and its findings and decree should be vacated and set aside. However, it should be remembered that the appellant does not ask that this court remand the case, with directions to take further evidence. The appellant is asking

this court, on the record presented, to substitute its judgment for that of the trial court. We might conclude from this attitude that the appellant is satisfied with the record as it stands, and is confident that the facts established require this court to grant her additional alimony and a division of property. With the record in mind, we have examined and considered the proffered evidence and what effect it might have had on the court's conclusions, findings and decree. Counsel for plaintiff offered to prove that defendant's earnings were somewhat greater than disclosed by the record. We believe that this evidence would not have changed the factual premises to such an extent that the trial court would have been required to make a judgment different than it made and entered.

We therefore hold that the trial court did not commit error in refusing to reopen the case upon plaintiff's motion.

There are numerous decisions of this court holding that the Supreme Court will not substitute its judgment in a divorce proceeding relative to alimony and division of property for that of the trial court unless the record clearly discloses that the trial court's decree in such matters is plainly arbitrary. Although on two or three occasions this court has announced a more liberal rule, we feel that it has granted relief only in cases where the trial court's decree was apparently unfair and inequitable under the circumstances.

In a most recent case, *Anderson* v. *Anderson,* 104 Utah 104, 138 P. 2d 252, 254, Mr. Justice Larson said:

"As to the failure to grant alimony or a property settlement, this court has said that the granting of alimony, and distribution of property in a divorce action, rests within the sound discretion of the trial court, and on appeal review will be made of the action, but the decree modified only when there is an abuse of that discretion and the award is not legally sound. *Stewart* v. *Stewart,* 66 Utah 366, 242 P. 947; *Adamson* v. *Adamson,* 55 Utah 544, 188 P. 635; *Pinney* v. *Pinney,* 66 Utah 612, 245 P. 329; *Bullen* v. *Bullen,* 71 Utah 63, 262 P. 292; *Blair* v. *Blair,* 40 Utah 306, 121 P. 19, Ann. Cas. 1914D, 989, 38 L. R. A., N. S., 269; *Friedli* v. *Friedli,* 65 Utah 605, 238 P. 647; *Pinion* v. *Pinion,* 92 Utah 255, 67 P. 2d 265, 267."

We believe that the great weight of authority supports the rule that a decree of the trial court in divorce proceedings, relative to alimony and division of property, will not be modified except when the trial court has abused its discretion. Otherwise, the appellate court by its own actions would alter the purpose for which it was created. An appellate court cannot remain a court of appeals and invite a review of every case decided by a lower tribunal where its judgment fails to satisfy one or both parties to the litigation.

Mr. Justice Wolfe said in *Pinion* v. *Pinion*, supra (page 262 of 92 Utah, page 268, of 67 P. 2d) :

"* * * Even in an equity case, we do not overturn the judgment unless it is fairly against the preponderance of the evidence. The writer believes that every intendment should be in favor of the trial court, for not only does he in a divorce case have the parties before him, enabling him to test credibility by demeanor, but the conduct and manner of the parties in the court room sometimes gives much aid in solving who really is at fault. Moreover, a trial judge may 'live with' a divorce proceeding in its preliminary stages and know it from angles which the record does not disclose. In any event, solutions of these domestic problems are difficult and largely not capable of a satisfactory solution either to the judge or the parties."

"Judicial discretion" is the term applied to the judgment of the court when, in the absence of statute or other positive law and there is no fixed rule by which the court's judgment must be guided, the court's ruling or decision results from that which under the circumstances appears right and equitable. This exercise of power must not be arbitrary, but directed and persuaded by reason and the conscience of the court.

Unless the trial court abused its discretion its decree relative to alimony and property should stand. What factors should the trial court consider in determining the amount of alimony to be awarded? What should be the basis for a division of the property? It has been held repeatedly that in divorce proceedings the problem of alimony and division of property must rest upon the particu-

lar facts and circumstances of each case. *Dahlberg* v. *Dahlberg,* 77 Utah 157, 292 P. 214; *Hendricks* v. *Hendricks,* 91 Utah 553, 63 P. 2d 277.

"The court in passing upon these may and should consider all the peculiar circumstances involving each or both of the parties." 27 C. J. S., Divorce, § 233; *Blair* v. *Blair,* 106 Kan. 151, 186 P. 746; *Miller* v. *Miller,* 186 Okl. 566, 99 P. 2d 515; *Reed* v. *Reed,* 182 Okl. 149, 77 P. 2d 30.

While it may be impossible to list all the elements that can and should govern the court's actions relative to alimony and division of property, courts have frequently enumerated some of the factors that should enter into such considerations. In *Anderson* v. *Anderson,* supra, Mr. Justice Larson has briefly set forth the basis and reasons for granting alimony and Mr. Justice Wolfe in *Pinion* v. *Pinion,* supra, lists eight factors or elements to be given consideration by the court in awarding alimony and in settling property rights. The case at bar can be weighed and measured quite accurately by the use of these factors. In our discussion we shall consider these in the following order: (1) Ages of the parties when married. (2) Duration of marriage. (3) What did the parties surrender or give up by marriage? (4) What property, if any, did the parties contribute upon marriage? (5) The amount of property and kind now held by the parties. (6) The ability and opportunities of each party to earn money. (7) Financial condition and necessities of each party, including abilities to save and care for earnings. (8) Health of the parties. (9) The standard or mode of living of the parties.

The plaintiff and defendant are about the same age. The doctor at the time of trial said he was 51; she said she was nearly 50. When these people married they, like most young people, surrendered the ties of family and undertook the common responsibilities of matrimony. Neither party was possessed of property. Apparently they each contributed optimism and ambition. During the first years of marriage they lived for each other. The defendant attended school

to equip himself as a doctor of medicine, and the wife cared for the home. In 1922 Mrs. Allen became the mother of twin boys. After living together as man and wife for 15 years they separated and have not since that time resumed their former relationship.

From 1935 until judgment was entered in this case, Mrs. Allen was the recipient of support money decreed her by courts of Pennsylvania and Utah. When separate maintenance was granted first, the couple had accumulated very little property but the defendant had completed his education and was earning approximately $5200 a year, without office or other professional expenses. In 1935 when separate maintenance was first granted by the Pennsylvania court, plaintiff was given $175. In 1937 upon application the court increased the allowance to $225 a month. This was the largest amount ever granted to plaintiff until judgment was entered in this case.

When the doctor came west in 1939 he had approximately $1000, a small amount of equipment and some other personal property of small value. Mrs. Allen had some personal property, which she had stored in Philadelphia and which she never had released and forwarded to her. When this case came to trial the doctor had established himself in his specialty and was making better money than he had ever earned previously. The boys then were of age and in military service. Mrs. Allen was living in a completely furnished apartment situated near the center of Salt Lake City. She had been earning approximately $80 a month from her own efforts and had been receiving about $100 a month from the boys from an allowance granted them while in the military service. Mrs. Allen testified that she was without money and owned no property except her personal effects and the linens and household articles she had stored in Pennsylvania. In the meantime the doctor had practically paid for office equipment costing in excess of $15,000 besides paying his office overhead, income taxes, property taxes and the maintenance provided for the plaintiff. He also had a few hundred dollars on hand but practically all of the doctor's

accumulations, with the exception of the surrender value of the insurance policy heretofore mentioned and the money he had on hand, were essential to his profession. It certainly would have been unreasonable to have ordered him to sell or hypothecate his equipment or a part of it so as to make a division of property other than that decreed by the trial court. It should be borne in mind that during the years plaintiff and defendant lived together they did not accumulate any tangible property, but during those years the defendant studied, worked and sacrificed to place himself in the position he later attained. The efforts of plaintiff did not assist defendant directly in acquiring property, yet we cannot say that by caring for the home and the children she did not assist the doctor along the road to professional security. As here, where the defendant was found at fault justifying a divorce, the wife is entitled to alimony or provision for her support.

The doctor now is well established. He is highly regarded in his field. This is made manifest by his employment with reputable hospitals and influential concerns. Members of the medical profession generally are able to continue their professional practice until late in life. After having once established a reputation for ability, the expert generally continues to make a good living. The earning ability of a doctor is about as certain as that of any field of endeavor in life and may be as stable as the profits from most financial investments.

That the trial court could have concluded plaintiff would be unable to earn her living and under the circumstances should not be expected to do so is easily understood. From the record there is nothing to indicate that either party is in poor health, but it does appear that plaintiff's hands were injured from work done in connection with the doctor while handling the X-ray machine.

In summarizing the elements that could have influenced the trial court it should be remembered that the Utah court in 1941 granted plaintiff but $150 support money and that this allowance was never increased although plaintiff

petitioned for additional assistance. It is interesting to note that for nine years plaintiff was content with separate maintenance, but just as soon as the doctor's earnings increased so that he was enjoying a more lucrative practice, she felt the circumstances justified other action and a division of property besides a much more liberal allowance.

The trial court may have concluded from the record that as the boys were of age, Mrs. Allen could live quite comfortably on $275 a month in as favorable style of living as she had experienced. It may have concluded that the doctor, with his office fully equipped, could continue to pay $275 with as much certainty as he had paid other maintenance decrees of lesser amounts and that in case of the death of the defendant, the insurance policy would provide for plaintiff probably with greater certainty than any property it might award her under the circumstances when the decree was made and entered.

We feel that good reason supports every provision of the trial court's decree. We hold the judgment of the lower court was not arbitrary, but one exercised with discretion. The judgment is affirmed; the parties to bear their own costs.

LARSON, C. J., and McDONOUGH, WADE, and WOLFE, JJ., concur.