## MacDONALD v. MacDONALD.

No. 7665.   Decided November 1, 1951.   (236 P. 2d 1066.)

See 27 C. J. S., Divorce, sec. 142. Drunkenness as ground for divorce. 17 Am. Jur., Divorce and Separation, secs. 133-139; 120 A. L. R. 1176.

*John D. Rice,* Salt Lake City, for appellant.

*John H. Snow, E. C. Jensen,* Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff brought this action for a divorce; defendant counterclaimed for separate maintenance; her counsel asked at the trial to amend to ask for a divorce also. Judgment was for plaintiff, defendant appeals.

The numerous points she relies on for reversal fall generally under these two main contentions: (1) that the evidence does not support the judgment granting the plaintiff a divorce, but to the contrary requires judgment for her on her counterclaim; and (2) that the decree was inequitable and unjust to her. Certain other assignments of error, deemed to be of sufficient importance to notice in this opinion, will be treated incidentally.

One such error relates to the pleadings. The plaintiff's complaint alleged cruelty and habitual intoxication for the past four years in general terms. The court denied the defendant's motion to dismiss and for a more definite statement under Rule 12(e), U. R. C. P. At the trial, the plaintiff abandoned the ground of cruelty and relied entirely upon the allegation of habitual intoxication for the four-year period. No evidence of cruelty was introduced except as incidental to proving the ground of habitual intoxication. Therefore, the defendant could not have been prejudiced by the court's refusal to require the plaintiff to make a more definite statement as to the cruelty he claimed. Under the new Utah Rules of Civil Procedure, the pleading was sufficient.

The parties married at Oakland, California, June 15, 1922; they have one child, Barbara Ann, age 25, who is now in a convent. About 1941, while the parties were still residing in California, the defendant began to drink intoxicating liquor excessively. By the time the parties moved to Salt Lake City in 1946, her drinking

had gone to such excesses as to present a considerable family problem. In 1948, a divorce action was filed by plaintiff which was thereafter dismissed and the parties reconciled. In June, 1949, the defendant spent a short period in the State hospital for observation and was released as being without psychosis. The trial court found that she had been guilty of habitual drunkenness for a period of at least four years; the evidence supports that finding.

The fact that the 1948 complaint was dismissed and the parties reconciled does not condone her prior conduct so as to wipe it out from consideration at the time of this trial; where the defendant's misconduct is resumed, the law permits the injured party to assert all the prior misconduct, as well as that occurring subsequent to the condonation. *Arnold* v. *Arnold*, 76 Cal. App. 2d 877, 174 P. 2d 674; *Burt* v. *Burt*, 48 Wyo. 19, 41 P. 2d 524; *Thum* v. *Thum*, 105 Colo. 352, 98 P. 2d 279.

This appears to be one of those cases where the marriage had so far deteriorated that there was nothing for the court to do except to recognize the failure, and to use the fairly common phrase, "pronounce a benediction on the wreck"; then proceed to make the best arrangement of the property and income of the parties so that they could readjust their lives to the new situation as well as possible.

It is true, as plaintiff maintains, that this court has announced the doctrine that in divorce cases it will weigh the evidence and may substitute its judgment for that of the trial court. *Dahlberg* v. *Dahlberg*, 77 Utah 157, 292 P. 214; *Hendricks* v. *Hendricks*, 91 Utah 553, 63 P. 2d 277. Nevertheless, this court should not do so lightly, nor merely because its judgment may differ from that of the trial judge. We adhere to the qualifications set forth in the more recent expressions of this court: that the judgment will not be disturbed unless the evidence clearly preponderates against the finding of the trial court; or there has been a plain abuse of discretion; or where a manifest injustice or inequity is wrought. *Anderson* v.

*Anderson,* 104 Utah 104, 138 P. 2d 252; *Allen* v. *Allen,* 109 Utah 99, 165 P. 2d 872. See discussion of this point by Mr. Justice Turner in the latter case.

The assets possessed by the parties were as follows: Their home, valued at $13,000, less a $6,000 mortgage, net value $7,000; household furniture and equipment valued at $2,000; 1949 Hudson automobile valued at $1,400, less a lien of $212; a bank account of $6,948.25 in defendant's name—which was the balance of an inheritance of $8,000 which she had received in 1950. Defendant also has an expectancy in the estate of her mother who was 82 years of age at the time of the trial. The plaintiff has been employed by the Chicago, Milwaukee, St. Paul & Pacific Railroad Company at a good salary for many years; he is at present general agent for that company at Salt Lake City at a gross salary of $481.80 per month, or a net of $387.56 after all deductions. The court awarded the defendant all of the assets except the automobile; ordered the plaintiff to pay her attorney's fees in the sum of $250 and $378.10 payments in arrears. Except for the award of the assets just mentioned, the court made no allowance to the defendant for alimony except the sum of $10 per year which he awarded as a nominal sum. He stated,

"Such assets are sufficient to care for defendant * * * and should keep her in such fashion that she will not become a charge upon public authorities. Should defendant's financial condition become such that she is in danger of becoming a public charge, the duty of support should fall upon the plaintiff and not upon the public authorities * * *."

Defendant complains that the court abused its discretion in not awarding her substantial alimony; in not imposing a higher duty upon plaintiff than merely to ■ see that she does not become a public charge. She states pointedly,

"After 29 years of marriage which almost totally wrecked my life physically and mentally, how magnanimous of the court to decree that I may use my own money to live on."

She makes the valid contention that where there are sufficient assets and income to do so, she is entitled to be provided for according to her station in life and as demanded by her condition of health and lack of ability to work; that she should not be cast aside in her helpless condition to "sink or swim" or depend on others. With this argument, we agree. This misfortune falls not only upon their marital adventure; it falls upon and affects them both individually. It is part of the continuing responsibility of the marriage covenant: "in sickness, in health; for better or for worse * * *" which cannot be entirely avoided, even by divorce.

The trial judge awarded the divorce to the plaintiff and we do not question the correctness of his decision in that regard. Although the question of fault is not by any means to be entirely disregarded in determining the rights to property and alimony, it is settled that a spouse against whom a divorce is granted may under some circumstances be awarded adequate alimony. *Alldredge* v. *Alldredge*, 119 Utah 504, 229 P. 2d 681. However, there is very little likelihood that all of the fault was on one side. There is evidence that the plaintiff associated freely with another woman; that he has seen her seven or eight times a month; that he drank with her and took her to parties; that he went to her apartment and she to his; and that he bought her a gift. Just how this conduct on his part is related by way of cause or effect to Mrs. MacDonald's excessive drinking we are not able to divine. The court must deal with the facts as they are made known to it. We should remain aware of the fact that the resort to excessive drinking is in most instances not the cause of conduct; it is usually a manifestation of some mental or nervouse illness, or maladjustment to the problems of life, and is often sought as an escape from the realities of existence.

From the point of view of adjusting property rights to best serve the social needs of the parties involved, a spouse

who is at fault may be in greater need of alimony than a more innocent one. This case is an excellent illustration. If Mrs. MacDonald were not suffering from the disability of uncontrollable alcoholism, she might readjust her life, seek gainful employment and assist in sustaining herself. She is in such a sorry plight that both parties conceded that she cannot be expected to do so. It certainly does not comport with good conscience to turn such an unfortunate individual out to fend for herself after having given 29 years to this marriage, good or bad as her conduct may have been.

The problem of attempting to do justice to parties in a divorce action as to the division of property and the awarding of alimony is undoubtedly one of the most perplexing situations ever to confront a court. The longer the period of marriage, the greater the difficulties. It would be a wise judge indeed who could accurately apportion the weight of all the factors and arrive at the one correct solution, if there be such. The problem is of such a nature as not to be susceptible of solution by any exact formula; indeed the authorities frequently say that for that reason each case must be determined upon its own facts. *Dahlberg* v. *Dahlberg,* supra; and *Allen* v. *Allen,* supra. This is so within the framework of certain general rules. Some of the most important problems of a lifetime, for the individuals involved, are wrapped up in such litigation. Great caution

is necessary to prevent the contentions and strife which frequently exist in contested divorce cases from distorting the judgment by placing extraordinary emphasis on particular instances of blameworthy conduct or some unusual sacrifice or contribution in some one phase of the over-all picture.

During the writer's experience as a trial judge, the opinion of Chief Justice Wolfe in the case of *Pinion* v. *Pinion,* 92 Utah 255, 67 P. 2d 265, was found helpful. Based on

that pattern, the following was devised as a general formula for attempting to get all of the factors together in perspective and compare and evaluate them in adjusting the rights and obligations of the parties. All may not be present or important in every case, but we apply them to the evidence herein. The first six points relate to conditions existing at the time of the marriage:

(1) The social position and standard of living of each before marriage: Here, she was unemployed, had never worked, was a woman of culture and was living with her parents; he had the same social status but was employed.

(2) The respective ages of the parties: He was 28; she was 30.

(3) What each may have given up for the marriage: Nothing significant is shown in this case.

(4) What money or property each brought into the marriage: she brought nothing; he only his salary.

(5) The physical and mental health of the parties: Both assumed to be good.

(6) The relative ability, training and education of the parties: He apparently had a good position and income; she had no training or work experience.

The following points (7 to 15 inclusive) relate to conditions to be appraised at the time of the divorce, giving some attention to comparison with points 1 to 6 inclusive:

(7) The time of duration of the marriage: 29 years.

(8) The present income of the parties and the property acquired during marriage and owned either jointly or by each now: It is listed elsewhere herein.

(9) How it was acquired and the efforts of each in doing so: Here, entirely through his efforts and salary, except $300 of hers which went into the original house equity and the $6,900 from her inheritance.

(10)   Children reared, their present ages, and obligations to them or help which may in some instances be expected: None, the only child being in a convent.

(11)   The present mental and physical health of the parties: His is good; her mental health is poor, which also affects her physical health.

(12)   The present age and life expectancy of the parties: He is 57; she is 59; they each have an expectancy of about 15 years.

(13)   The happiness and pleasure, or lack of it, experienced during marriage: The only significant facts shown are sufficiently revealed elsewhere in this opinion.

(14)   Any extraordinary sacrifice, devotion or care which may have been given to the spouse or others, such as mother, father, etc. and obligations to other dependents having a secondary right to support: This factor is not important here, but the converse of it is. She should not be required to look to her mother for support, but the definite expectancy in her 82-year old mother's estate is something which may well be kept in mind as a future contingency.

(15)   The present standards of living and needs of each including the cost of living: This need not be treated in detail in this opinion. Both have plenty to meet present needs. If and when a further hearing on the matter becomes necessary, the trial court will have to give further consideration to it.

If we keep clearly in mind the fact that the decree was based upon the conditions which existed at the time of the divorce, we do not see that the decree is unjust to the defendant. The court awarded her much the larger share of the family assets, and in view of the fact that she had $6,900 in cash immediately available, saw no necessity to decree that she be paid substantial alimony immediately. True, this cash is hers, but it was properly taken into account in appraising the entire financial

situation of the parties and adjusting their property rights. Although the plaintiff does have a very good income, he was at the time of trial in debt to the extent of about $400 payments in arrears; $200 on his car; $250 to defendant's attorneys and whatever his own attorneys' fees were.

In making the decree awarding defendant only the nominal sum of $10 per year alimony, which was based on the then circumstances, Judge Van Cott expressly recited that it was for the purpose of preserving her right to alimony and directed that if danger of dependence appeared, the burden of her support would fall upon plaintiff and not upon others. The court having continuing jurisdiction to do so, it can and will, upon timely application, decree to her adequate alimony whenever the need arises. This does not mean that she must entirely deplete her assets before such application is made. It is not often that one blanket can be cut to cover two beds, but here fortunately there are sufficient economic assets and income so that the defendant may live in a decent and respectable manner according to her accustomed standard of living (liquor excepted) without undue hardship on the plaintiff. This may entail a future application to the court but that is what is contemplated by the decree. Defendant expresses a number of forebodings of future possibilities: the plaintiff's retirement, remarriage, illness of the parties, etc. "Sufficient unto the day is the evil thereof." If there is a substantial change in circumstances, a review and revision of the decree to meet them may be had. The court's decree works no serious injustice as conditions now exist.

Defendant also asserts the court committed reversible error in refusing to appoint a guardian ad litem for her at the trial. The complaint was filed in January, 1950 and the trial was not had until January, 1951. During the intervening time, a hearing was had on an order to show cause at which the defendant was present and testified. At no time prior to the day of trial did defendant or her counsel make any contention that she was

incompetent or required a guardian. On the day of the trial, although her counsel had notified her and made diligent efforts to get her to court, she refused to attend the trial. The court granted a recess for the purpose of having counsel for both sides go to see her and importune her to attend the trial; this she refused to do but stated that she entrusted her cause to her counsel. When she was sent to the State hospital, by Judge Ellett, he specifically stated "for 30 day observation". No psychosis was found and she was released before the 30 days were up. She is presumed to be sane and there is no showing in the record that the defendant was mentally incompetent so as to require the appointment of a guardian ad litem at the time of trial.

After the trial, upon proper petition, another division of the Third District Court found that defendant fails for considerable periods of time to properly attend to important matters involving her property rights and ■ appointed the Walker Bank & Trust Company as her general guardian. In view of her condition, this procedure was well advised and undoubtedly will work out to the best interest of all concerned.

Other assigned errors have been considered; no prejudicial error is found.

Judgment is affirmed. Costs to respondent.

WOLFE, C. J., and WADE, J., concur.

HENRIOD, Justice (concurring).

I concur, although reluctantly as to the alimony award. It is difficult to yield to an award of $10 a year to a wife, even though she may have assets of her own sufficient to see her through for a limited time. Such an award fails to anticipate the possibility that her husband may have died during or near the time of exhaustion of her assets. Here the better part of appellant's life has been devoted to her husband, and she now arrives, in an atmosphere of

misfortune, at a bourn of incapacity with an uncertain future, where current monthly contributions from the husband could aid in insulating against the day when this appellant well might need assistance most. However, the decision here leaves the door open for future application to the court for assistance if the respondent is available and able to contribute.

McDONOUGH, Justice.

I concur in the opinion of Mr. Justice CROCKETT and also in the observations of Mr. Justice HENRIOD relative to the alimony award.