**Barbara J. WARREN, Plaintiff and Appellant,**

v.

**Robert L. WARREN, Defendant and Respondent.**

**No. 17514.**

Supreme Court of Utah.

Sept. 29, 1982.

John D. Parken, Paul H. Proctor, Salt Lake City, for plaintiff and appellant.

Nicolaas de Jonge, Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

In this divorce action, plaintiff appeals from the trial court's division of marital assets and liabilities, its alimony award and its refusal to award plaintiff her attorney fees.

Plaintiff married defendant in 1952 in San Antonio, Texas, four months after the death of her father left her with an inheritance of approximately $200,000. Defendant, who was studying engineering at Rice University, worked only part-time during the first two years of their marriage, while

plaintiff paid for most of the living expenses of the parties from her inheritance money. In 1954, defendant received his engineering degree. Since that time, he has worked full-time for a company now known as E-Systems, contributing his income to support of the family. In addition to this income, plaintiff expended substantial sums from the principal and income of her inheritance money during the marriage.

In dividing the property of the parties, the trial court awarded to plaintiff all of the property inherited from her father, consisting of a trust fund, 490 shares of National Bancshares Corporation of Texas (National Bancshares) stock, jewelry and household furniture. Plaintiff also received one-half of the equity in the parties' house and most of the personal property of the parties acquired during the marriage, including jewelry, furs, a Saab automobile and nearly all of the household furnishings. Defendant received one-half of the equity in the house, 1,624.32 shares of E-Systems stock acquired under employee stock option and stock ownership plans, 1 unit of a corporate income fund and unnamed other stocks managed by Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), an employee retirement pension, $75 in savings bonds, a $2,700 promissory note, a $500 account receivable and personal property including a Jeep, a boat, various tools, a gun collection and other items related to his hobbies of hunting and fishing.

The trial court ordered plaintiff to pay debts incurred on 9 credit cards and $2,604 in income taxes for the year 1979, for a total of $10,633. The court ordered defendant to pay $1,003 in past mortgage payments, $2,000 to Merrill Lynch and $2,604 in 1979 income taxes. The court also awarded plaintiff $400 per month alimony for a 4-year period and the right to petition for extension of alimony at the end of that period.

### I. Distribution of Property

■ Plaintiff claims that the trial court overvalued the property awarded to her and undervalued the property awarded to defendant and that this resulted in an unfair division of the marital property. The trial court valued the parties' furniture and household effects at a total of $51,484 based on an itemized list of estimated values compiled by defendant and admitted as evidence. Plaintiff claims that defendant's estimates are inflated and that they improperly reflect replacement cost rather than actual market value.

Plaintiff suggests no alternative criteria by which the trial court might have evaluated the household property. Plaintiff did not furnish a list of estimates equivalent to that of defendant or any other appraisal of the property. Plaintiff provided one exhibit showing the sources and purchase prices of some furnishings. However, the list is far from complete and contains no indication of current values. Plaintiff was directed in the pretrial order and in an earlier order to supply information concerning such present values, but failed to do so.

Apart from defendant's valuation of the property, the only evidence before the court as to value of the parties' household effects consisted of a nonitemized appraisal made at defendant's request by an antique dealer, Tom Olsen. Olsen estimated the value of the contents of the home at a minimum of $50,000 on an immediate sale basis and at a retail replacement value of $100,000. Thus, the only specific evidence presented on the issue of value supports the $51,484 figure adopted by the trial court.

The trial court's valuation of the jewelry and furs awarded to plaintiff accords with written appraisals of these items by a highly experienced furrier and jeweler whose qualifications plaintiff does not dispute. Each of the estimates was prepared in accordance with appraisal practices standard in the profession of the appraiser and without knowledge of the purpose of the appraisal. In addition, both appraisals were made more than two years in advance of the trial date. Each of the appraisers, testifying at trial, indicated that the items appraised might have increased significantly in value during the intervening two years. Thus, the trial court did not err in valuing the jewelry and furs in accordance

with the professional appraisals provided, which constituted the sole evidence before it on the issue of current value.

■ Plaintiff alleges that the trial court unfairly awarded to defendant most of the income-producing assets, such as stocks, and that most of the property awarded to her was unlikely to increase in value. Even assuming, *arguendo,* that securities constitute a more desirable asset than tangible real or personal property of equivalent value, we find no injustice in the trial court's allocation of property. The trust received by plaintiff as part of that allocation consisted of stocks, government securities and one promissory note to which plaintiff, in her brief, assigns a total value of approximately $97,500. In addition, plaintiff received National Bancshares stock carrying a value of approximately $13,720 on the first day of trial, according to the testimony of a Merrill Lynch stockbroker. Defendant's E-Systems stocks, on the other hand, held a value of approximately $74,313, according to Wall Street Journal stock quotations for the same day as reported in defendant's testimony. Defendant's remaining stocks, excluding one unit of corporate income fund, carried a stipulated total value of $309. Thus, plaintiff received a total of approximately $111,220 in securities, while those received by defendant amounted to approximately $74,622 in value.

■ Plaintiff also complains that the trial court undervalued defendant's pension fund by assigning to the fund its calculated present value rather than its ultimate future value. Defendant is not presently eligible to receive pension payments and plaintiff has shown no reason why his interest in the fund should be assessed at its projected future value rather than at its actual present worth. Moreover, the parties stipulated, in their pretrial agreement, to the $20,247 valuation used by the trial court. Because the court used an unrealistically low 8% interest rate to compute the present value of the pension, the $20,247 figure is, in all likelihood, too high rather than too low an estimation of value.

Valued in accordance with the evidence discussed above and with the trial court's findings, the property distributed to plaintiff carried a total value of $209,250, while the property received by defendant amounted to $133,988 in value. We find no inequity or abuse of discretion in the court's allocation.

## II. Division of Liabilities

■ Plaintiff contends that the trial court unfairly burdened her by requiring her to pay $10,633 in liabilities consisting chiefly of unpaid credit card balances. Plaintiff in her testimony did not attribute any of the credit card debts to expenditures made on behalf of defendant. However, she claims that some of the liabilities represent expenditures made on behalf of the children, implying that defendant should bear responsibility for such expenditures.

Plaintiff presented no evidence at trial to show what percentage of the credit card liabilities might be attributed to expenditures in behalf of the children, specifically identifying only two such expenditures. All of the children of the parties are over 18 years of age and none was living at home at the time of trial. From the evidence presented, the trial court properly might have concluded that plaintiff had incurred the credit card liabilities principally for her own benefit and that she should bear responsibility for such liabilities.

■ Plaintiff also labels as unjust the trial court's order that she pay a portion of the parties' 1979 joint tax liability. The total federal income tax of the parties in 1979 was $13,917 plus interest and penalties. Of this amount, defendant assumed responsibility for $11,821. Plaintiff, who acknowledges that her own 1979 income constituted one-sixth of the total income of the parties, was ordered to pay $2,604, approximately one-sixth of the total tax. It is difficult to see how the trial court's division of tax liabilities could have been improved upon.

## III. Alimony

■ Plaintiff claims that the trial court's alimony award is insufficient in both

amount and duration. Plaintiff alleges that her monthly income, including the $400-per-month alimony awarded by the trial court, amounts to only $1,100 and that this income does not permit her to maintain the standard of living to which she has become accustomed. According to the pretrial stipulation signed by the parties, plaintiff receives approximately $800 income from her inherited trust and $600 in stock dividends each month. Thus, plaintiff's present monthly income, including alimony, totals approximately $1,800, rather than the $1,100 alleged by plaintiff.

Although plaintiff's present income appears to be more than adequate, plaintiff is free to supplement this income by accepting full-time or part-time employment. None of plaintiff's children now lives at home, and plaintiff testified to no other responsibilities which might prevent her from seeking paid employment. Plaintiff complains that she has no previous work experience and that she suffers a "medical disability of the hands." However, no evidence in the record shows plaintiff to be unemployable. Although plaintiff had carpal tunnel release surgery early in 1980, she presented no testimony or other evidence to show any impairment of the use of her hands following that surgery. Nor does the record disclose any other circumstance which might prevent plaintiff from acquiring employable skills. The 4-year minimum duration of plaintiff's alimony award, in conjunction with plaintiff's right to petition for extension of alimony payments, ensures ample time for the acquisition of such skills prior to the termination of alimony. Plaintiff appears to blame defendant for the fact that she obtained no specific employment skills during the marriage of the parties. However, when cross-examined on this subject by plaintiff's counsel, defendant testified that before the birth of children to the parties he encouraged plaintiff to finish work on her baccalaureate degree and to find a job, but that plaintiff had not done so.

Although this Court may weigh the evidence and substitute its judgment for that of the trial court in divorce actions, we will not do so lightly or because of a mere difference in judgment from that of the trial court.[1] Our examination of the record discloses no reason for modification of that court's alimony award.

IV. Attorney Fees

█ Plaintiff offered no evidence at trial to show the nature or amount of any attorney fees incurred in litigating the present action or any need for court-ordered assistance in the payment of such fees. Utah law clearly requires presentation of such evidence in order to support an attorney fee award.[2] The trial court therefore properly denied plaintiff's request for such fees.

Affirmed.

STEWART, OAKS and HOWE, JJ., concur.

DURHAM, Justice (dissenting):

I dissent from the majority opinion because I believe the trial court abused its discretion in two respects: first, in the manner of computing alimony to be paid to appellant and second, in failing to provide a credit to appellant for the more than $146,000 she contributed to the marriage from the separate trust fund she acquired prior to the marriage.

The trial court, in setting alimony, obviously took into consideration the respective incomes of the parties. The pretrial stipulation and the court's findings of fact establish appellant's estimated income from her trust at a 1980 level of $9,600, or $800 per month. In addition, the pretrial stipulation and the court's findings show a six-month income figure from "dividends ... from

1. *Turner v. Turner,* Utah, 649 P.2d 6 (1982); *MacDonald v. MacDonald,* 120 Utah 573, 236 P.2d 1066 (1951).

2. *Lincoln Financial Corp. v. Ferrier,* Utah, 567 P.2d 1102 (1977); *Butler v. Butler,* 23 Utah 2d 259, 461 P.2d 727 (1969); *Hatch v. Sugarhouse Finance Co.,* 20 Utah 2d 156, 434 P.2d 758 (1967); *Brasher Motor & Finance Co. v. Anderson,* 20 Utah 2d 104, 433 P.2d 608 (1967); *Steadman v. Lake Hills,* 20 Utah 2d 61, 433 P.2d 1 (1967).

the National Bank of Commerce stock" of $3,650.29 for the first half of 1980, which amounts to approximately $600 per month. It appears from a review of the record that this $3,650.29 may in fact be part of the trust fund income, the National Bank of Commerce stock being part of the trust which generates the total of $9,600 per year. It is impossible to determine from the record before us whether this is the case. It appears that the trial court may have confused the National Bank of Commerce stock with separate income from *National Bancshares stock* in the approximate amount of $600 per *year,* and therefore counted the $3,650.29 twice, once as part of the trust income and once as separate income. The National Bancshare income appears in 1979 income tax returns at the level of $568 for the entire year, thus substantiating the possibility that the confusion existed. In any case, there is sufficient ambiguity in the record to raise a serious question in my mind as to whether appellant receives a total of $1,400 per month from her separate sources, or only $800 per month (plus $600 per year) as she claims. That question should be remanded for evidentiary clarification and any necessary modifications in the findings.

I am also concerned by the fact that the trial court awarded appellant only $400 per month for a temporary period of four years. These parties were married for 27 years. Appellant supported respondent during his education, ran their household, and raised four children as a full-time homemaker. She is now in her fifties, has no employment training, experience or benefits, and has been out of the commercial marketplace for nearly thirty years. She will obviously be eligible for only low-paying menial or clerical positions which will be in striking contrast to the level of respondent's employment and to the lifestyle they enjoyed together. When these facts are added to the comparison between respondent's monthly gross income of $3,333.33 and appellant's $800 (or even $1,400), the disparity is so great as to warrant a finding of abuse of discretion. The four-year limitation is unrealistic, and appears to ignore the factors of appellant's age, health problems (as found by the trial court), limited employability, length of the marriage, and respondent's ability to pay. Appellant is entitled under these circumstances to permanent alimony with necessary readjustments when respondent retires or his income (or appellant's) changes for any other reason. The $400-per-month amount should be reassessed in light of any clarification in the amount of her monthly income.

I also dissent from the majority opinion's approval of the trial court's treatment of the more than $146,000 contributed to the marriage from plaintiff's separate trust fund acquired prior to the marriage. Although the trial court has broad discretionary powers in a divorce action which, absent an abuse of discretion, will not be interferred with on appeal (*see, e.g., Jesperson v. Jesperson,* Utah, 610 P.2d 326 (1980)), I believe the trial court under the circumstances of this case abused its discretion by failing to provide a carefully computed credit to plaintiff for her contribution to the marriage from the corpus of her separate premarital trust fund. The large amounts of income and interest which also were used for marital purposes were properly included in the marital estate, but the $146,000 from the principle should have been credited to appellant in the court's division of the marital property. A trial court considers many factors in making a property settlement in a divorce action, but the settlement should not be such that one party is damaged or punished. *See, e.g., Read v. Read,* Utah, 594 P.2d 871 (1979). By failing to give plaintiff credit for the more than $146,000 she expended for marital obligations from the principle of her premarital legacy, the trial court has, in effect, punished plaintiff for contributing to the marriage from her separate funds. Even though the trial court awarded plaintiff the balance of her trust fund, it should have gone further and provided in the property settlement a carefully calculated credit to plaintiff for her contribution. In fact, this Court has previously stated that, in restoring the parties to status quo, a trial

court should consider the parties' premarital assets and, if possible and equitable, permit each party to depart with at least what they brought into the marriage.