CHARLES L. HANNAMAN, RESPONDENT, *v.* LEWIS KARRICK, APPELLANT.

PARTNERSHIP.—DISSOLUTION.—FORCIBLE EXPULSION.—Where one partner forcibly expels the other and takes forcible possession of the partnership effects and wholly excludes the other partner from all connection with the business, for a period prior

to the expiration fixed by the partnership agreement, such acts do not effect a dissolution of the partnership, but an action for an accounting lies for the effects and for the profits for the period during which the complaining partner was expelled from the business.

ID.—EXPULSION OF PARTNER.—COMPENSATION.—Where one partner expels the other and continues the business; he is not entitled, in the absence of an express stipulation therefor, to compensation for his services unless complete justice between the parties requires such an allowance.

REFEREE.—FINDINGS.—APPEAL.—The findings of a referee which have been adopted by the court will not be disturbed unless it is clearly manifest that there was error or oversight.

APPEAL from a judgment of the district court of the third district, and from an order refusing a new trial, Hon. Charles S. Zane, judge. The opinion states the facts.

*Messrs. Sutherland and Howat,* for the appellant.

*Messrs. Rawlins and Critchlow,* and *Mr. Waldemar Van Cott,* for the respondent.

BARTCH, J.:

This is an action for the dissolution of a partnership, brought by one partner against his copartner. The case was referred to a referee with power to try the same and report a decree. The referee tried the case and made his report, which was confirmed by the court. The defendant thereupon moved for a new trial, which motion having been overruled, he prosecuted his appeal in this court.

It appears from the record that the plaintiff and defendant entered into an agreement of copartnership on the 3d day of February, 1886, for a term of five years from that date, to carry on a mercantile and laundry business. The plaintiff furnished $5,000 of the capital and the defendant $20,000, on $15,000 of which he was to receive interest until the principal was paid back to him. The defendant also loaned

the plaintiff $5,000. They were to share the profits and loss equally, and the plaintiff was to manage the business, but the defendant was not required to devote his time to it. Under this agreement they carried on the business until about the 1st of February, 1888, when the defendant, having become dissatisfied with the management, forcibly ejected the plaintiff, and took charge of the business himself. He continued so in charge until about the 1st of January, 1890, when he sold the stock in trade and business, without the assent of the plaintiff, and without recognizing any right in him, or accounting to him for any share of the profits or of the proceeds of sale. The defendant claims that the plaintiff had no interest in the concern, and that the firm of Hannaman & Co. was dissolved about the 1st day of February, 1888, by virtue of an oral agreement between the parties to the effect that the plaintiff was to have 60 days in which to raise the money to purchase the interest of the defendant, or, failing so to do, the defendant was to have the businesss by assuming the payment of the indebtedness of the firm and cancelling the $5,000 note which he held against the plaintiff. That such an agreement was made is denied by the plaintiff, who claims that he was forcibly ejected by the defendant, and that there was no dissolution of the firm. The evidence relating to this oral agreement was conflicting, and in relation thereto the referee found as a matter of fact as follows: "That about February 1, 1888, defendant, Karrick, took forcible, wrongful, and exclusive possession of all of said business, stock, partnership, books, and accounts, and the premises on which the same were situate, and on said last named date the defendant, Karrick, forcibly and wrongfully ejected the plaintiff therefrom, and ever afterwards prevented the plaintiff from participating and assisting in said business, and performing his part of said agreement, and in participating in any way

in the profits of said business." Counsel for defendant insist that the evidence is insufficient to justify this finding of fact, and that the circumstances relating to the transaction ought to be taken into consideration in passing upon the question of the existence of the agreement under which the defendant claims to have taken possession.

It cannot be doubted that where, in a case like this, the parties to the action are the principal witnesses, the circumstances tending to corroborate or contradict the testimony of either party are frequently of controlling weight, and should be considered in determining the question. It is noticeable, in examining this case, that counsel on both sides have noted in their briefs with considerable care and apparent candor the circumstances surrounding the making of the agreement, but nevertheless they have failed to remove the conflict in the testimony as it appears of record. This being the case, it is but fair to presume that the referee, in attempting to reconcile the conflict in the evidence, took into consideration the demeanor of the witnesses while testifying, their manner of testifying, and the apparent consistency, fairness, and congruity of their testimony. The opportunity thus to observe the witnesses afforded him great aid in arriving at the truth. This court has no such opportunity, and therefore the conclusions as to the facts reached by the referee and confirmed by the court below will not be disturbed, unless it is clearly manifest that there was error or oversight. Nothing of this kind is apparent from the record. There are circumstances which strongly tend to corroborate the testimony of the plaintiff, and support the finding in question. The defendant himself testified that under the agreement he was to assume and pay the debts of the firm and cancel the $5,000 note. There is nothing to show that this note was canceled. In fact, the contrary appears, for he avers in his answer that the plaintiff owes him $7,000, and the

testimony shows that this includes the $5,000 mentioned in the note. It is also shown that after the time alleged for the making of the agreement the plaintiff deposited $979.60 in the business, and the written notice from defendant to plaintiff, stating that the firm of Hannaman & Co. was dissolved, was dated May 16, 1888, which was long after the plaintiff had been ejected. It also appears that after the plaintiff was ejected from the store the defendant continued to credit himself with interest on the $15,000 loaned the firm under the partnership agreement. The plaintiff, after he had been forcibly removed, notified the defendant that he was desirous of performing his part of the partnership agreement. All these and other acts and circumstances shown by the record seem to be inconsistent with the theory that the parties were acting under and controlled by the agreement in question, and the finding of fact complained of seems to be a fair and reasonable deduction from the proofs, for if, as must be determined, there was no such an agreement, then the act of the defendant in forcibly ejecting the plaintiff and assuming the entire control of the business was wrongful and without authority, the plaintiff having had the right to manage the business under the partnership agreement.

The only remaining question material to the decision of this case is as to whether the action of the defendant in forcibly and wrongfully ejecting the plaintiff and assuming control of the firm's business dissolved the partnership. Can one partner take forcible possession of the property of a firm, and thereby effect a dissolution of the partnership before the expiration of the time specified in the agreement? There are authorities which affirm this proposition, and hold that, if the act of dissolution was wrongful, the party effecting it is simply liable in damages to the party injured. See Story, Partn. § 273; *Skinner* v. *Dayton,* 19 Johns. 513; *Solomon* v. *Kirkwood,* 55 Mich. 256, 21 N.

W. Rep. 336. But even under most of the authorities so holding it would seem that the party effecting the dissolution within the stipulated time must act in good faith, and without any sinister motive, and for reasonable cause, or, in cases where the circumstances show the dissolution to be specially injurious to the other partners, equity will interfere. Generally, in a case where there has been a dissolution of the partnership on account of disagreement between the partners, it has been at the instance of the partner who was not himself at fault. Where the partnership is merely at will, the right of one partner to terminate it must be conceded; but where by agreement it is to continue for a time stipulated the party seeking a dissolution before the expiration of the time ought in justice at least be required to act in good faith, and at a reasonable time, and in a reasonable manner. In the case of a partnership for a stipulated time of duration, where the business has been established, is becoming profitable, and has good future prospects, to allow one of the partners *sua sponte* to expel the other and dissolve the partnership with a view to appropriate the business to himself would be to adopt a doctrine at once inequitable, and unsupported by either reason or justice. There seems to be no good reason why a person should be allowed to commit a breach of his contract in such case, while in all other cases of flagrant violation, not within the partnership, he would be compelled to specifically perform if it was within his power to do so. Why should a partner be thus allowed to ruin the business of the firm from mere caprice, or of his own volition, without cause, and in violation of his agreement, and sacrifice the entire object of the partnership? That such a violation may entitle the injured partner to damages is no answer, for damages, in many cases, must necessarily prove to be utterly inadequate to compensate

for the destruction of a profitable and growing business; and, besides, this mode of redress is usually slow and unsatisfactory, and is not a remedy that will or can do complete justice between the parties. Where there is such a breach between the partners as to render continuance impossible, or when dissension has dispelled the hopes, prospects, and advantages which induced its formation, or if for any just cause the partnership ought to be dissolved before the expiration of the term, then a court of equity is competent to grant relief. But it would scarcely seem to come within the principles of justice to permit one partner to expel another from a profitable business for some real or fancied wrong or mismanagement, and then continue the business himself, and profit by his own wrong, responsible only in damages.

Mr. Justice Story, in his commentaries on the Law of Partnership, in section 275, speaking of the power of one partner to dissolve the partnership where the time of duration is stipulated, says: "In cases where the partnership is by the agreement to endure for a limited period of time the question whether it may within the period be dissolved by the mere act or will of one of the partners, without the consent of all the others, does not seem to be absolutely and definitely settled in our jurisprudence, although it would not seem, upon principle, to admit of any real doubt or difficulty. Whenever a stipulation is positively made that the partnership shall endure for a fixed period, or for a particular adventure or voyage, it would seem to be at once inequitable and injurious to permit any partner at his mere pleasure to violate his engagement, and thereby to jeopard, if not sacrifice, the whole objects of the partnership; for the success of the whole undertaking may depend upon the due accomplishment of the adventure or voyage, or the entire time be required to put the partner-

ship into beneficial operation." In *Gerard* v. *Gateau*, 84 Ill. 121, Mr. Justice Scott, delivering the opinion of the court, said: "A party who is the author of the ill feeling between himself and partners ought not to be permitted to make the relation he has induced the ground of a dissolution of the partnership. His conduct may have been taken with a view to that very result, and it would be inequitable to allow him advantage from his own wrongful acts. It would allow one partner, at his election, to put an end to his own deliberate contract, when the other had been guilty of no wrongful act or omission of duty. The results flowing from a premature dissolution of a partnership might be most disastrous to a partner who had embarked his capital in the enterprise." So in *Henn* v. *Walsh*, 2 Edw. Ch. 129, the vice chancellor said: "A partnership agreement, like any other, is binding upon the parties. They must adhere to its terms. Neither partner is at liberty to recede from it against the will of the other, without a sufficient cause. Mere dissatisfaction by one partner will not justify him in filing a bill for a dissolution, where by the express agreement it is to continue for a definite term; and the court will not interfere to dissolve the contract upon such ground."

The views thus expressed have the apparent support of most elementary writers, and seem to be in conformity with the doctrine prevailing in England. The contrary doctrine, if not indefensible, is founded on reasons exceedingly artificial. It is based on the ground that one partner has the rights to found his claim, real or otherwise, to immediate safety and indemnity on an obvious injury to the interests and rights of another, which is alike inequitable and unjust; and we think it is not supported by the weight of authority. Story, Partn. §§ 275, 276; Story, Eq. Jur. § 673; Lindl. Partn. p. 575, § 2; *Ferren* v. *Buhlmeyer*, 34 How. Pr. 33; *Pearpoint* v.

*Graham,* 4 Wash. C. C. 332; *Peacock* v. *Peacock,* 16 Ves. 49; *Cash* v. *Earnshaw,* 66 Ill. 402; *Van Kuren* v. *Manufacturing Co.,* 13 N. J. Eq. 302. Where, as in the case under consideration, one partner has forcibly expelled the other, and assumed control of and continued to carry on the business himself, the partner thus working the dissolution of the firm must account to the injured partner for the profits up to the time of a lawful dissolution, or to the expiration of the term, and also for the property of the firm, or, in case of sale, for the proceeds; and, unless the partners have expressly stipulated therefor, he is not entitled to compensation for his services, thus performed of his own volition, except in cases where complete justice between the parties requires such allowance. 1 Colly, Partn. § 324; Story, Partn. §§ 182, 329, 331; 3 Kent, Comm. 64; *Crawshay* v. *Collins,* 15 Ves. 218; *Cole* v. *Moxley,* 12 W. Va. 732; *Willett* v. *Blanford,* 1 Hare, 253; *Hartman* v. *Woehr,* 18 N. J. Eq. 383; *Kinloch* v. *Hamlin,* 27 Amer. Dec, 441. The position assumed by counsel for defendant, that, whether or not there was such an agreement as claimed by him, the defendant had the right to take possession under the mortgage, and that such taking of possession dissolved the partnership, is not tenable, as appears from the record. He alleges in his answer that he, "in pursuance of said agreement with the plaintiff, took possession of the said business, stock, assets," etc., but nowhere does he allege that he took possession under the mortgage, with the intention of dissolving the partnership. Nor does it appear that this point was raised on the trial, nor that the parties intended the security given for the loan to confer a right whereby he could defeat the objects of the partnership, nor that any sale was made under the mortgage.

It is not necessary to discuss the other points raised in the record, because we do not deem them material in the

decision of this case. The defendant claimed the right to forcibly expel the plaintiff from the partnership, and appropriate the business to his own use. It is clear that he could not in this manner dissolve the partnership, and he must be held to account to the plaintiff for his share of the profits and proceeds of the sale of the property. But we think, under the circumstances of this case, and from the fact that after the 1st day of January, 1887, each partner appears to have been allowed to draw out of the business $125 per month for personal expenses, that the defendant ought to have been allowed the sum of $3,000 personal expenses for the two years during which he conducted the business of the firm, and that the judgment should be modified and affirmed in the sum of $9,040.53, with interest on said sum from the date of the judgment of the district court. As thus modified, the judgment is affirmed.

MINER, J., concurred.

Afterwards upon petition for a rehearing the court modified the above opinion so as to deduct only $1,500 from the judgment, since $3,000 would be the allowance for both partners given to one.