431 P.2d 802

**Carol Joan STONE, Plaintiff and Respondent,**

**v.**

**Val Franklin STONE, Defendant and Appellant.**

**No. 10698.**

Supreme Court of Utah.

Sept. 11, 1967.

 

James A. McIntosh, Salt Lake City, for appellant.

Thomas, Armstrong, Rawlings, West & Schaerrer, Neil D. Schaerrer, Salt Lake City, for respondent.

CROCKETT, Chief Justice.

Defendant, Val Franklin Stone, appeals from an order denying his petition in proceedings supplemental to a divorce to deprive plaintiff of custody of their children and award them to him.

The parties were married in 1952. In 1964, after 12 years of marriage and the birth of four children, then ages 11, 8, and twins 5, the plaintiff was awarded a decree of divorce, custody of the children and $50 each for their support. Two years later in 1966, the defendant initiated this proceeding requesting the court (1) to hold plaintiff in contempt for failure to honor his visitation privileges, (2) to deprive her of custody and award the children to him, and (3) to require the plaintiff to have a mental examination.

After a pretrial conference had framed those issues, a plenary trial was had on June 14 and 15, 1966, as a result of which the court found in favor of the plaintiff on each issue, i.e., (1) that she was not in contempt for refusal of defendant's visiting rights; (2) that she was neither mentally incompetent nor otherwise unfit to have the custody of the children; and (3)

that there was not a sufficient showing to justify ordering her to submit to a mental examination. As to the latter issue he added this, "However, the plaintiff should be closely observed, and if it appears at some future time that a psychiatric and physical examination is necessary, application to the court shall be made immediately."

In reviewing the trial court's order in divorce proceedings there are certain well established principles to be borne in mind. The findings and order are endowed with a presumption of validity, and the burden is upon the appellant to show they are in error. Even though our constitutional provision, Section 9 of Article VIII, states that in equity cases this court may review the facts, we nevertheless take into account the advantaged position of the trial judge. Accordingly, we recognize that it is his prerogative to judge the credibility of the witnesses, and in case of conflict, we assume that the trial court believed the evidence which supports the findings. We review the whole evidence in the light most favorable to them; and we will not disturb them merely because this court might have viewed the matter differently, but only if the evidence clearly preponderates against the findings.

For similar reasons, the trial court is allowed a comparatively wide latitude of discretion in determining what order should be made in such matters; and we will not upset his judgment and substitute our own unless it clearly appears that the trial court abused its discretion, or misapplied the law. The following are a few examples of innumerable cases supporting the principles just stated: Slaughter v. Slaughter, 18 Utah 2d 274, 421 P.2d 503; Dahlberg v. Dahlberg, 77 Utah 157, 292 P.2d 214; Hendricks v. Hendricks, 91 Utah 553, 63 P.2d 277; Anderson v. Anderson, 104 Utah 104, 138 P.2d 252; Allen v. Allen, 109 Utah 99, 165 P.2d 872; Alldredge v. Alldredge, 119 Utah 504, 229 P.2d 681, 34 A.L.R.2d 305 (1951); Pinion v. Pinion, 92 Utah 255, 67 P.2d 265.

The charge that the trial court erred in refusing to order the plaintiff to have a psychiatric examination injects into this case an unusual issue which requires special comment. Defendant's contention is based on Rule 35(a), U.R.C.P., which provides:

(a) Order for Examination. In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a disinterested and impartial physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination

and the person or persons by whom it is to be made.

This rule was initiated primarily for use in personal injury cases. Yet it must be conceded that by its language it applies to any action in which the mental or physical condition of a party is in controversy. However, the important point is that it is not mandatory, as the position of the defendant seems to imply. Its language shows clearly and unequivocally that it was intended to be discretionary. This was undoubtedly made so designedly, and this is particularly desirable because mental examinations may be involved.

The question of a person's sanity nearly always involves considerable delicacy. If mere allegations in an affidavit compelled the court to require a party to submit to a psychiatric examination, a way would be open for opposing parties to harass, annoy or intimidate each other. The potential for mischief in such a situation is obvious and the court would always be well advised in exercising caution and restraint in regard to such a request, as it appears was done here.

While there is some evidence that the plaintiff had at times been somewhat erratic in her behavior, there is countervailing evidence that the mental and/or nervous difficulties she suffered from had been temporary, and that she was a good mother to her children. The capstone on this point is that upon disputed evidence, the trial court made an affirmative finding that she was not mentally incompetent nor otherwise unfit to care for them. The concern for their welfare in including in the order the provision that if in the future there should be evidence of need for a psychiatrist that should be immediately called to the attention of the court is commendable. In proceedings supplemental to the divorce, the choice of the older children as to parental custody is advisory only. See Anderson v. Anderson, 110 Utah 300, 172 P.2d 132.

It is our opinion that adherence to the principles hereinabove discussed impels the conclusion that the trial court did not abuse his discretion either in refusing to order the mental examination or in refusing to modify the decree. His action is therefore affirmed. Costs to plaintiff (respondent).

CALLISTER and TUCKETT, JJ., concur.

HENRIOD, J., concurs in the result.

ELLETT, Justice (dissenting).

I am not in disagreement with the prevailing opinion regarding the holding that the trial judge is in a better position to determine credibility of witnesses than we are. However, I cannot agree with that part of the decision which holds that the trial court did not abuse his discretion in

failing to order the plaintiff to submit to a mental examination. By refusing the order for such an examination, the court denied to himself the right to be informed by an expert as to whether the plaintiff was in fact capable of caring for her children. I cannot believe that we should put the stamp of approval upon the rulings of a judge which in effect suppress all evidence regarding a matter about which only experts can give any worthwhile testimony.

I, therefore, dissent and would like to set forth my reasons in full.

Plaintiff was awarded a decree of divorce from the defendant in 1964, and despite the fact that she had suffered a nervous breakdown in 1958, 1959, and 1960, she was awarded the custody of the four minor children. On March 31, 1966, the defendant through counsel moved the court (a) to issue an order to show cause as to why the divorce decree should not be modified to grant custody and control of the minor children to defendant, (b) to hold the plaintiff in contempt of court for refusal to allow him reasonable periods of visitation with the children, and (c) for an order pursuant to Rule 35(a), U. R. C. P., to require plaintiff to submit to a mental examination. In the motion filed, counsel alleged:

The plaintiff is mentally incompetent to perform the duties of a mother to these children and the plaintiff has, in fect, been receiving psychiatric consultations and treatment and the defendant herein alleges that the psychiatrist whom the plaintiff has been seeing will testify that she is incompetent and that she should be committed to a hospital for further treatment in this regard.

Pursuant to the motion, the court issued an order to show cause, which was made returnable April 8, 1966. It included the following:

The plaintiff is further ordered to show cause why she should not submit to a mental and psychiatric examination by a disinterested and impartial physician and psychiatrist pursuant to the prayer in the motion and upon the grounds more fully described herein.

It is interesting to note that instead of noticing the motion for the examination separately, counsel for the defendant chose to include it as a part of the order to show cause.

This order, according to the sheriff's return, was served upon the defendant himself and not upon the plaintiff. However, on April 6, 1966, the plaintiff answered the defendant's motion for an order to show cause and stated in paragraph 4 thereof the following: "Denies paragraph 3 A admitting only that plaintiff has received three psychiatric consultations, and denies all the rest of paragraph 3A."

She further alleged affirmatively that she was without sufficient funds to pay for the psychiatric examination requested by the defendant.

On April 8, 1966, the parties appeared before the Law and Motion Division of the District Court, and plaintiff's counsel moved that the motion for examination be dismissed on the grounds that it would take more time than allowed before the Law and Motion judge to hear. There was considerable argument about the amount of time that the plaintiff would require to make discovery as to why the defendant wanted to examine plaintiff under Rule 35. The court finally indicated that 30 days should be sufficient. The defendant agreed to pay for the examination, and the matter was referred to the pretrial judge for a setting. Twenty interrogatories were served on the defendant on April 18, 1966, and seven pages of answers were returned on May 3, 1966. The pretrial was held two days later.

The following are the pertinent parts of the pretrial order signed by the judge:

THE COURT: The hearing is based upon the motion of the defendant to modify the Decree heretofor [sic.] entered into. It is the opinion of the Court at Pretrial that Pretrial serves little purpose in these matters. However, both counsel desire to set forth the issues and problems of said hearing and these issues are as follows:

\* \* \* \* \* \*

3. Whether pursuant to Rule 34 [sic.] [the rule should have been 35] of the Utah Rules of Civil Procedure there is sufficient cause for the plaintiff to submit to a psychiatric, physical examination.

4. Should the Court decide the plaintiff should be examined by a disinterested impartial physician, the examining physician shall be entitled to all medical records pertaining to the person being examined.

Counsel for the plaintiff objects to the furnishing of all medical records, which objection is overruled.

\* \* \* \* \* \*

On June 14 and 15, 1966, the order to show cause was tried before the court. Seven witnesses were examined regarding the merits of the case, and in addition thereto the judge interviewed the four minor children. The two older boys, ages 12 and 10, expressed a desire to live with their father, while the seven-year-old twins chose to remain with their mother.

The court found that the mother was not mentally incompetent nor otherwise incompetent or unfit to care for the children and refused to modify the original decree of divorce in regard to the custody of the children. It further found the plaintiff not

to be in contempt regarding the claim of refusal of reasonable visiting rights and further found that there was not sufficient cause "at this time" for the court to order plaintiff to submit to a psychiatric or physical examination.

In a memorandum decision filed the day after the hearing the judge stated:

1. That the plaintiff is not mentally incompetent to take care of the four minor children, nor is the plaintiff otherwise unfit to take care of them.

2. That there is not sufficient cause at this time for the Court to order the plaintiff to submit to a psychiatric and physical examination. However, the plaintiff should be closely observed, and if it appears at some future time that a psychiatric and physical examination is necessary, application to the Court shall be immediately made.

The defendant appeals from the ruling of the court and assigns error on the part of the trial court in two regards:

1. Refusing to award him custody of the children, and

2. Refusing to require a psychiatric examination pursuant to Rule 35, U. R. C. P.

Let us examine his assignments.

In the first place, he wishes us to substitute our findings for those of the trial court, who saw and heard the witnesses. This court has no right to substitute its judgment for that of the trial court in an equity case any more than it has in a law case. The Constitution of Utah, Article 8, Section 9, provides: " * * * In equity cases the appeal may be on questions of both law and fact; in cases at law the appeal shall be on questions of law alone. * * *" This constitutional provision empowers the Supreme Court to examine the evidence and determine whether it is sufficient to sustain the findings. See McKay v. Farr et al., 15 Utah 261, and particularly page 264, 49 P. 649 page 650, where it is said:

While we have power, under the constitution, to review questions of fact in an equity case, still, when such cases have been regularly tried before a court of chancery, and facts found on all material issues, we will not disturb such findings unless they are so manifestly erroneous as to demonstrate some oversight or mistake which materially affects the substantial rights of the appellant. This is the settled rule in this state.

See the following cases: Wells v. Wells, 7 Utah 68, 24 P. 752; Hannaman v. Karrick, 9 Utah 236, 33 P. 1039; Stahn v. Hall, 10 Utah 400, 37 P. 585; Short v. Pierce, 11 Utah 29, 39 P. 474; Dwyer v. Salt Lake City Mfg. Company, 14 Utah 339, 47 P. 311, all to the same effect

The statement of the law to the effect that this court would not disturb the find-

ings of the lower court unless they were so manifestly erroneous as to demonstrate some oversight or mistake which materially affects the substantial rights of the appellant was the law of this state for many years and was until the case of Campbell v. Gowans, 35 Utah. 268, 100 P. 397; 23 L.R.A.,N.S., 414. In that case this court held that it was the court's duty to determine not whether there is sufficient evidence in the record to support the findings but whether the findings as made are such as were called for by the evidence adduced. It further held that the parties on appeal are entitled to the court's judgment on the facts, and it is the court's duty to give it. This holding is made without reference to the proceedings in the constitutional convention as set forth in the dissent in the case of First Security Bank of Utah v. Demiris, 10 Utah 2d 405, 354 P.2d 97. Reference is made to the dissent in that case as a sort of swan song for the principles of law that were originally intended by the founders of our Constitution. However, so many cases since the Campbell case have assumed that this court has the power to make findings of fact that I am compelled to confess that that is the law in the State of Utah at this time. However, when the trial court has the opportunity to pass on the weight and credibility of witnesses in an equity case, he is in the same advantageous position over us as he is when he tries a law case, and we should not substi-tute our judgment for his. unless we are convinced that he erred. .

We cannot say from the evidence presented before the court that he erred in making the ruling he did. However, we have the further question of determining whether he had before him all of the evidence which defendant wished to present. The request for a change of custody was based upon a claim of mental incompetence on the part of the plaintiff. Rule 35 of our Rules of Civil Procedure provides in part as follows:

(a) Order for Examination. In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a disinterested and impartial physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

It will be noted that the order is to be made only for good cause shown and when the mental condition of a party is in controversy.

There can be no question but what the mental condition of the plaintiff was in controversy before the court. It is neces-

sary for us to determine if good cause was shown and, if so, did the court abuse its discretion in refusing to order the examination.

To show good cause for an examination, the movant must show that the evidence sought to be obtained would be relevant to the issues in controversy and that such evidence could not otherwise be obtained. It is neither necessary nor proper to determine the issue in dispute before determining whether or not to grant the motion. To refuse to grant a motion for a psychiatric examination on the grounds that a hearing convinces the judge that the party is sane is somewhat like refusing to hear a psychiatrist at the hearing on the merits because other witnesses and evidence had already convinced the judge that there was no need for further evidence to be given.

In Vol. 2A of Barron and Holtzoff's work on Federal Practice and Procedure, Section 822, the following paragraph is set out:

An order for the physical or mental examination of a party is not granted as of right. The matter is addressed to the sound discretion of the trial court. The moving party must make a showing of good cause. Usually this is very perfunctory, as for example a statement in the motion that defendant does not believe plaintiff to be injured as seriously as he claims to be. Sometimes, however, the courts are more exacting, and the motion has been denied where the court has not been satisfied that the examination is needed. In personal injury cases the general practice is to allow the defendant to have at least one medical examination of the plaintiff as of course, since good cause is necessarily implied in the very nature of the litigation.

In the case of Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152, it was said that one who asserts mental or physical disability provides good cause for the examination. Also in the case of Leach v. Greif Brothers Cooperage Corporation, D.C., 2 F. R. D. 444, 445, good cause was shown by an allegation that plaintiff was not injured as badly as he claimed.

While these statements apply to parties who assert their disability, it does not necessarily follow that one who asserts another to be disabled has shown good cause. However, they do indicate that it takes very little showing to convince the court that there is good cause for having an examination in a proper case.

In the instant case the defendant answered written interrogatories under oath wherein he stated the grounds upon which he thought he was entitled to have the examination. Among others he listed the following: She has denied that her children were hers. She has taken pictures

of her children to neighbors and told them that they were not pictures of her children. She has claimed that the height of the children varies from day to day, and she states that they do not have the same chins or noses on one day which they had on the preceding day. She claims that the teachers send the wrong children home to her at the end of school. She claims that people spy on her by means of telephone calls. She believes she has a tape recorder in the house that is spying on her. At one time she felt that she had a tape recorder plugged in the back of her head. Because of her belief that she was being spied on by the telephone, she had her phone changed. She has gone to a psychiatrist several times because of these symptoms. She believes things are occurring in her house which are not really occurring. She goes into moods of depression and sits and stares at the wall in her house, and during these times will not talk to the children or pay any attention to them at all.

Therefore, it would seem that as of May 3, 1966, the defendant had shown good cause so as to require an examination of the plaintiff.

Our Rules of Civil Procedure were formulated for the purpose of granting the widest possible latitude for the ascertainment before trial of the facts underlying issues in dispute. There is no question here but what the mental condition of the plaintiff was an underlying issue; in fact, it was the most important issue involved in the determination of whether or not to change the custody of minor children.

While the rule says that the judge "may" order an examination, it would seem that this involves a discretion only as to whether the benefits to be obtained from the examination might be outweighed by harm to the one to be examined. The judge would probably not order an examination which was dangerous to the party or painful or fraught with probability of serious consequences. At any rate, he has a discretion in such matters, the exercise of which should not be lightly interfered with by this court. Absent any special reason to anticipate some harmful result, the court should order an examination of a matter in controversy when good cause is shown; and a failure to do so would be an abuse of discretion.

Counsel for plaintiff did everything in his power to prevent the defendant from having an independent psychiatric evaluation. This should have been evidence to the court that one was needed, and there was no reason to set the case over for 30 days to afford defendant an opportunity to make discovery as to whether plaintiff needed the examination. It was for the court to determine from the evidence before it by way of pleadings and affidavits presented whether to grant the motion for the examination. The court is to decide only if defendant is entitled to have a psy-

chiatric examination made of the plaintiff, not if the plaintiff is insane. When the psychiatrist who had treated the plaintiff was on the witness stand and was asked the question of whether in his opinion the plaintiff was insane, *counsel for plaintiff objected on the ground that it was a privileged matter*, and thus the plaintiff was able to prevent the court from hearing any evidence from an expert as to her sanity.

Had the plaintiff thought she was sane, she would have benefitted by having her psychiatrist tell the court so. However, by knowing in advance what her own psychiatrist would say, she sealed his lips with the claim of privilege and elected to rely on her lay neighbors to establish her sanity.

By her opposition to the request for an independent psychiatric examination and by her claim of privilege, she was able to deny to the trial court all of the evidence which a judge would require to make a proper decision in this case.

If there had been nothing else to alert the judge to the need for an independent psychiatric examination by a qualified psychiatrist, this claim of privilege should have been sufficient.

While the defendant's counsel was partly at blame for not calling his motion up other than in connection with his order to show cause, it appears that the court had one clear opportunity to rule on the motion after good cause was shown. Good cause had not been shown when the matter first came before the Law and Motion Division on April 8, 1966. However, on May 3, 1966, ample cause had been established for the ordering of the examination, and the court should have so ordered instead of setting up an issue as to whether or not examination should be made.

The defendant further contends that the court below erred in not awarding the custody of the two older children to their father because they elected to go with him, and since they were more than 10 years of age, he says the court was obligated to honor their election by Section 30–3–5, U.C.A.1953. This section reads as follows:

> When a decree of divorce is made the court may make such orders in relation to the children, property and parties, and the maintenance of the parties and children as may be equitable; provided, that if any of the children have attained the age of ten years and are of sound mind, such children shall have the privilege of selecting the parent to which they will attach themselves. Such subsequent changes or new orders may be made by the court with respect to the disposal of the children or the distribution of property as shall be reasonable and proper.

A casual reading of this section shows that it applies only at the time of the divorce. See Anderson v. Anderson, 110 Utah 300, 172 P.2d 132. To permit children to change custody when they arrive at

the age of 10 years would be to enable them to pit one parent against the other, and this the court will not do.

I think the court abused its discretion in not ordering a psychiatric examination, but since the matter was tried to the court, it should not be necessary to retry the entire matter. The order of the court should be set aside with directions to grant the motion for an independent psychiatric examination and to continue the matter for further hearing until the independent psychiatrist can give testimony to the court, after which the court should make new findings and such an order as is warranted by all of the evidence presented to him. Each party should bear its own costs on this appeal.