478 P.2d 492

**Esther B. KING, Plaintiff and Respondent,**

**v.**

**Lawrence M. KING, Defendant and Appellant.**

**No. 12056.**

Supreme Court of Utah.

Dec. 11, 1970.

K. Samuel King, Salt Lake City, for defendant and appellant.

McCullough & McCullough, Leland S. McCullough, Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice.

Appeal from the district court's denial of what is termed "Defendant's Motion for

Amendment of Judgment, Or In The Alternative For A New Trial," in proceedings supplemental to a divorce. The parties were married in 1949 when the plaintiff was 37 and the defendant 24 years of age. After 16 years of marriage, in 1965, the plaintiff was awarded an uncontested decree of divorce in which the defendant had filed a consent and waiver. She was given the most substantial part of the family assets, the family home in which they had an equity of about $12,000 to $14,000, together with the furniture, the parties each getting one automobile, the defendant assuming the family debts and being required to pay alimony of $250 per month until the home debt was paid off, and $200 per month thereafter.

In July 1967, there was a strike at Kennecott Copper Company, where defendant was employed, which lasted until March 1968. During those months the defendant got behind in his payments of alimony. In September, 1967, plaintiff initiated proceedings against the defendant for contempt and for reduction of the arrearage to judgment. This was finally entered in the amount of $1,475, and the defendant was ordered to pay it off at $15.00 per month. Pursuant to that proceeding there was filed on the defendant's behalf an order to show cause why the alimony should not be reduced. It does not appear that there was any formal hearing on this latter motion until July of 1969, when evidence was ad-

duced concerning the then circumstances of the parties as compared to the time of the divorce.

The defendant, who is a 23-year employee of Kennecott, had about the same income of between $470 and $490 per month. He had remarried to a woman with four minor children by a previous marriage, but who is supposed to receive $150 per month for child support from her former husband; and $115 per month from Social Security. (It is not disputed that this taking on of a new family obligation is subordinate to his prior obligation to the plaintiff.)

The important issue at the hearing related to the condition of the plaintiff's health. At the time of the divorce she had been suffering from a nervous disorder and also some trouble with her back, for which she had been seeing physicians and a psychiatrist. The original findings stated as a basis for the alimony award:

That the Plaintiff is under doctor's care for a nervous condition and *is unable at the present time to secure or hold employment,* and that it is reasonable and proper that Defendant pay alimony to Plaintiff for her support and care in the amount of $250.00 per month, * * *

At the hearing in July 1969, there was introduced in evidence letters from her doctor, Wallace E. Hess. One dated July 10, 1968, stated that she had had corrective

surgery for her lower back in March of 1968, from which she had made a good recovery; that she was to be rechecked in three months to see if the vertebral fusion was solid, in which event she could resume normal work. In another letter about a year later, June 17, 1969, Dr. Hess stated that:

* * * she had an excellent postoperative result of an L5–S1 fusion * *. *She is capable of doing everything but the heaviest of lifting.* If one were to rate her as to permanent impairment, her permanent partial impairment *as loss of body function would be approximately 10%.*

Other testimony shows without dispute that plaintiff had engaged in normal housework and other activities; and that she had held two or three different jobs for short periods of time. She stated that she had not had any psychiatric care since 1968, and that she had made several attempts to find a job since her back operation and would agree to a reduction of alimony if she got a job.

It seems plainly apparent that after the hearing there was some kind of an understanding or a misunderstanding as to some reduction in the alimony. On July 21, 1969, counsel who then represented the plaintiff, Mr. Mitsunaga, sent a letter to the trial judge in which he stated:

Enclosed please find an order which I have prepared in connection with King v. King. Mr. King [attorney for defendant] and I have talked the matter over and it appears that there can be no adjustment other than the order which is enclosed. The order is enclosed on the basis of our conversation, the order recites that the payment shall remain in the sum of $250.00, except that $50.00 shall be applied toward the arrearage owed by the defendant. *In essence this reduces the alimony to $200.00 per month.*

After the arrearage has been paid by the defendant the amount of *alimony payments is to be reduced to $150.00 per month. This is the understanding which had [sic] with regard to the Court's intentions.*

It will be seen from that letter, particularly the emphasized words, that plaintiff's own counsel acknowledged that according to his understanding of what the court said, there should be a reduction of the alimony from $250 per month to $200 per month, with the $50 being applied toward the arrearages owed by the defendant until the arrearages were paid, and then the alimony to be $150 per month. The order submitted with the letter was never signed. On October 28, 1969, defendant's counsel, apparently acting on the assumption that the order had been signed, filed a motion to amend "The Judgment on Defendant's Motion To Terminate Or Reduce Alimony." This motion

was an anomaly because what it referred to as a "Judgment" and sought to amend had never in fact been signed by the court. At the time that motion was set for hearing the following exchange took place:

THE COURT: No. 6 on the calendar, civil file No. 11601, Esther B. King versus Lawrence M. King, defendant's motion for amendment of judgment or for new trial. Mr. King.

MR. KING: * * * the court has so many matters before it, I want to spend one minute on the background.
(* * * discussion off the record)
\*    \*    \*    \*    \*    \*

MR. KING: * * * Your Honor * * the court's memory apparently does not agree with mine * * *. That token relief I am afraid doesn't accomplish anything, and we would ask that a substantial measure of relief be granted * * *. Mr. Mitsunaga and I both understood this was the order *you were entering unless we entered into a different stipulation, you see, and that is why it was submitted.*

(Further discussion between court and counsel.)
\*    \*    \*    \*    \*    \*

MR. KING: * * * Your Honor, * *. My understanding was that the order proposed by Mr. Mitsunaga was the order the court said it would enter unless we entered into a stipulation to something different than that. * * * This order Mr. Mitsunaga submitted was * * * *what the court proposed* unless we stipulated something different to solve the problem * * *.

\*    \*    \*    \*    \*    \*

MR. MITSUNAGA: I would agree with Mr. King. *I thought that the court was talking in terms of the order of modification in the terms of and on a basis of the order that I proposed on the matter, and that is the reason I sent it to the court.* It was my understanding also in the matter.

MR. KING: I submit it.

THE COURT: The court has fully considered the evidence and * * * finds that there is *no* substantial evidence * * * to support a finding that would change the circumstances of the parties, and the motion to amend the *decree is denied.*

\*    \*    \*    \*    \*    \*

After the hearing just referred to, in September 1969, the plaintiff's counsel submitted an order, but that order likewise was not signed. It was not until six months later, March 20, 1970, that the court signed findings and an order, which findings read in part:

* * * That the Plaintiff is suffering with back problems after a spinal fusion operation on March 31, 1968 *rendering Plaintiff unable to bend or stoop to do*

*things; further, her back condition has rendered her unable to secure employment or hold employment.* The Plaintiff has seen Dr. Dillmenti [sic] and Dr. Hess in connection with her physical and nervous condition.

The conclusion of law reads: "The defendant has failed to establish a substantial change of circumstance to warrant a modification of *the original decree of divorce";* whereas the order based thereon recited that:

Defendant's motion for *amendment of judgment* or in the alternative for a new trial * * * is hereby denied.

The inconsistencies in both the oral statements of the trial judge at the conclusion of the September hearing, and in the findings and conclusions which were finally signed by him in March of 1970, in referring variously to amending "the decree" and to the "motion to amend judgment," which judgment had never actually been entered, suggest that over the months this matter was pending there may have been some lapse of memory or confusion as to the correlation between the evidence which had been taken and the issue before the court. These matters may not be of controlling importance in themselves, but they tend to add to our concern as to the correctness of the order made and corroborate

our conclusion that when the findings and order were finally signed in March of 1970, eight months after the evidence was presented, they were not realistically related to the evidence which had been presented.

As will be seen from what has been said above, it is not open to doubt that the plaintiff's own counsel had the impression that there was to be at least what he termed "a token" reduction of the alimony by $50 per month; and that after the arrearage had been paid off a further reduction to $150 per month. The most important point of concern on this appeal is the divergence between the evidence and the findings concerning the plaintiff's health. At the time of the divorce she had been in ill health physically and mentally, which was recited as the reason for the rather onerous burden of alimony upon the defendant. From the fact that at the time of the hearing four years later the evidence showed that the plaintiff had had the operation to correct her back trouble; that she had made a pretty good recovery and readjustment in her health, both mental and physical, so that her own doctor said that she was "capable of doing everything but the heaviest lifting," the conclusion cannot fairly be escaped that there was a substantial change in circumstances.

We remain aware of the prerogatives and the broad discretion accorded the

trial court in matters of divorce and supplemental proceedings therein. Nevertheless, this certainly does not extend to an arbitrary and unreasoning power to disregard credible, uncontradicted evidence and make findings inconsistent therewith and issue an order based thereon.[1] This proceeding being in equity, this court may review questions of both law and fact,[2] the very purpose of which is to rectify errors where the evidence does not support the findings or where it clearly preponderates against them.

 Because these supplemental proceedings in divorce actions are ambulatory in nature, and are subject to change with changing conditions, we do not presume to know what the circumstances of these parties are at the present time. We deem it proper, however, to rule in accordance with the appellant's contention: that the findings and the order based thereon are in error and to remand this case to the district court for such further proceeding and determination thereon as are just and equitable, not inconsistent with what we have said herein. Costs to defendant (appellant). (All emphasis added.)

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

1. See Stone v. Stone, 19 Utah 2d 378, 431 P.2d 802, and numerous cases therein cited; also Wiese v. Wiese, 24 Utah 2d 236, 469 P.2d 504 (May 8, 1970)

2. See Utah Const., Art. VIII, Sec. 9, which provides that in equity cases the appeal may be on questions of both law and fact.