The STATE of Utah, In the Interest of BABY GIRL MARIE, a person under eighteen years of age.

No. 14599.

Supreme Court of Utah.

Feb. 24, 1977.

James R. Hasenyager, Weber County Legal Aid Services, Ogden, for appellant.

Vernon B. Romney, Atty. Gen., Franklin B. Matheson, Asst. Atty. Gen., Robert L. Newey, Weber County Atty., Ernest W. Jones, Deputy Weber County Atty., Salt Lake City, for respondent.

MAUGHAN, Justice:

Before us is a mother's petition to vacate a decree of the Juvenile Court, terminating her parental rights. The petition, in substance and effect, is a direct attack on the judgment. The petition specifically alleges the court lacked jurisdiction to take the action it did. That point is well taken. The court lacked jurisdiction. We reverse, and vacate the order of termination. All

statutory references are to U.C.A. 1953, as amended.

55–10–77(5), confers jurisdiction upon the Juvenile Court to terminate parental rights. However, this statutory court is not granted unlimited power to terminate the parent-child relationship; the exercise of its jurisdiction is strictly and expressly limited by statute. 55–10–100(16) provides:

> The court may terminate all parental rights, provided that the provisions of section 55–10–109 are complied with.

Thus, if the Juvenile Court does not comply specifically with the provisions of Section 109 in a termination proceeding, any decree entered is in excess of its jurisdiction, is void, and subject to direct attack in a proceeding to vacate.[1]

55–10–109(1)(a), (b), (c) set forth the limits within which the court may exercise its power, when an involuntary termination of parental rights is sought. The limitations for a voluntary termination are set in 55–10–109(5). Subsection (2) sets forth the specific procedure to which there must be adherence to sustain the validity of a decree of termination; included therein is the provision, in mandatory terms, the parties must be advised of their right to counsel.

■ In the instant case, the petition and summons were on their face insufficient to invoke the jurisdiction of the court in a parental termination proceeding.

The allegation was the child was homeless or without proper care through no fault of the mother. This allegation follows the statutory definition of a "dependent child," 55–10–64(18), and would be sufficient to invoke the jurisdiction of the court for a custodial proceeding. Such must be distinguished from a termination proceeding pursuant to 55–10–109. The petition and summons further assert the mother desires to care for the child; is unable to do so, because the mother is seventeen years of age and cannot provide financial support; and the mother's parents are unwilling to care for the child. These allegations do not fall within the ambit of (a), (b), (c) of (1) of 55–10–109, and totally insufficient to invoke the jurisdiction of the court in a *termination* proceeding.

The mother had been represented by counsel in two prior hearings on October 6 and November 10, 1974. At this final hearing it was determined the child would remain in the custody of the Division of Family Services, the mother would have visitation privileges, and the matter would be reviewed in *one year*. In less than a month, on December 2, 1974, the petition to terminate all parental rights was filed, and the state concedes no notice of this petition was sent to counsel.

It was within this setting the young mother appeared at the hearing on January 9, 1975 where her rights were terminated. The only adult present, in addition to the judge and the prosecutor, was a social worker with D.F.S., who allegedly, had consistently exerted pressure on the mother to release the child for adoption. The record further reveals the social worker interjected herself into the proceedings and attempted either to answer, or direct the answer, for the mother. The record further raises a serious question as to whether the mother understood the nature of the proceedings. Her responses indicate she did not appreciate the distinction between a foster home and an adoptive home. The record does not indicate she was informed of her right to counsel. The Juvenile Court conceded she was never informed of her right to appeal.

The state contends the proceeding was a type of hybrid between a voluntary and involuntary termination proceeding, and the decree of termination can be supported on either basis. The following are the findings of the court to support termination of the mother's rights:

> . . . The natural mother of the above named child is unable to adequately provide for all the needs of the child

---

1. See *Farley v. Farley*, 19 Utah 2d 301, 431 P.2d 133 (1967). Jurisdiction as used herein is in the limited sense of the term, viz., the court lacked the power to give the particular relief it did.

and agrees that it is in the best interest of said child for parental rights to be terminated and for said child to be placed for adoption.

■ Such a finding shows the court had exceeded its jurisdiction under the only relevant involuntary grounds, viz., 55–10–109(1)(a) " . . . parents are unfit or incompetent by reason of conduct or condition seriously detrimental to the child; . . . ."

■ There was no finding, evidence, or allegation the mother was either unfit or incompetent, whether by conduct or condition, or that such had a seriously detrimental effect on the child. In the petition and summons, the entire termination proceeding was predicated on the mother's inability to provide financial support. Impecuniosity will not support a termination decree.

■ The decree may not be sustained as a voluntary termination since the court can only exercise its power under 55–10–109(5) when it is initiated by a *voluntary* petition of the parent. Furthermore, the decree must indicate the termination was based on the best interests of the parent and the child, which was not found in this case.

■ At the hearing on the petition to vacate, the court had a recollection there was a discussion off the record concerning counsel. Such a view merely sustains the mother's claim, for 55–10–109(2), commands:

. . . A verbatim record of the proceedings *must* be taken and the parties must be advised of their right to counsel.
. . .

The statute expresses a specific legislative intention to avoid the unfortunate consequences which occurred in this matter.

The finding made by the court in its denial of the mother's petition to vacate merits examination.

Mr. Daines [mother's counsel] according to uncontroverted representation to the court, advised the mother in connection with the petition for permanent termination and stood ready to appear with her at the hearing on the date the decree was entered but refrained from appearing when the mother informed him that she had decided to relinquish the child voluntarily and that she neither needed nor desired that he appear.

This finding is not supported by any admissible evidence. The counsel for the state, not under oath or as a witness, merely related what he recalled was a conversation with the mother's counsel—hearsay evidence, The mother's counsel was not called as a witness. The record indicates the mother shook her head during these representations. The court refused to permit the mother to testify and controvert the unsworn representations.

■ The court further found the mother was guilty of laches by not bringing her petition to vacate for a period of one year and three months. Since the mother was precluded from testifying there is an insufficient factual basis to sustain this matter.[2] Particularly, the mother has asserted in her brief the state deliberately engaged in a course of conduct designed to conceal her legal rights, e.g., she frequently went to the D.F.S. seeking knowledge of her child, she was not advised to seek legal assistance until the child had been adopted for a period of eight months.

The instant case is a tragic example which results from a failure to adhere to a clearly expressed statutory standard. The permanent termination of all parental rights is one of the most drastic actions the state can take. The legislature has limited the grounds therefor and acknowledged that in such a proceeding due process re-

**2.** Also see 46 Am.Jur.2d, Judgments, § 752, p. 915: " . . . The defense of laches has been regarded as not available against a motion to open or vacate a void judgment, for the reason that no amount of acquiescence can make it valid. . . . There may be some instances, however, under which laches or delay may be asserted to preclude relief, as where others innocently relied on the record of the judgment."

quires the assistance of counsel.[3] Here the state contends a young girl, standing alone, with full knowledge of her rights and the consequences of her actions, knowingly and intelligently waived her right to counsel, and to the baby she loved and desired to keep. Neither the record nor the law will sustain such a position.

WILKINS and HALL, JJ., concur.

ELLETT, Chief Justice (dissenting):

This is an appeal from a decision of the Juvenile Court dated May 4, 1976, wherein the court refused to set aside and vacate an order dated January 9, 1975, depriving an unwed mother, the appellant herein, of all parental rights in and to her illegitimate child.

The appellant gave birth to Baby Marie on August 10, 1974, and was at that time only sixteen years of age. She lived with her parents in a small apartment and the parents refused to allow her to bring the baby into the home. An initial hearing was held five days later and the baby was placed in the custody of the Division of Family Services for keeping. A week later another hearing was held at which time the mother was advised of her right to counsel. The matter was continued to October 3, 1974, and was subsequently reset for October 24, 1974.

The mother with her attorney appeared at the October 24th hearing and denied that she did not have the capability to care for her child and stated that she did want the child. The trial date was set for November 6, 1974. On that date, the appellant and her lawyer both appeared before the court. She told the court that she wished to keep the child but that her parents would not permit her to bring the child into their home.

The court ordered that the child be placed with the Division of Family Services for the reason that the mother did not have the capabilities to then care for the child. He also set a review in one year.

On December 2, 1974, a petition was filed in the Juvenile Court stating "that the above named child is homeless or without proper care through no fault of her mother, to wit: said mother desires to care for child but is unable to do so because said mother is 17 years of age and cannot provide financial support for said child; said mother's parents are unwilling to care for child, said father is either unknown or has no interest in said child; therefore, it is recommended that said child be placed for adoption and parental rights of said parents be terminated."

The matter was set for January 9, 1975, and due notice given thereof. The appellant appeared without counsel. The court talked fully to the appellant, and the following is abstracted from the record:

THE COURT: What do you think would be the best thing to happen to Marie? For her benefit?

MOTHER: To stay with the foster home.

SOCIAL WORKER: He wants to know about the, do you think it would be best for the baby to placed in an adoptive home?

MOTHER: Ya.

THE COURT: So she's got some permanent parents that can raise her and do things for her. It takes a lot of courage to give up a child but if you have a situation where it is in the best interest of the child to be placed for adoption that can maybe be the most loving thing you can do for the child. But I don't want, I don't want to talk you into anything or out of anything, I just mainly need to know how you feel about this so we know whether to have a trial on it.

MOTHER: But I can't keep Marie because she's going to (inaudible) . . .

THE COURT: Then you agree that I ought to terminate your rights to Marie so we can place her for adoption?

MOTHER: Ya.

On April 2, 1976, some fifteen months later, the mother filed the present petition

---

3. *State v. Jamison*, 251 Or., 114, 444 P.2d 15 (1968).

whereby she sought to have the order of January 9, 1975, vacated. She appeared then with the attorney who now represents her in this appeal. She claims that since the record does not affirmatively show that she was advised of her right to counsel that the order made January 9, 1975, is void. She relies on Section 55–10–109(2), U.C.A. 1953, Replacement Vol. 6A which reads:

> (2) A termination of parental rights may be ordered only after a hearing is held specifically on the question of terminating the rights of the parent or parents. A verbatim record of the proceedings must be taken and the parties must be advised of their right to counsel. . .

The record in the hearings in the Juvenile Court is made by a tape recorder, and it is not always complete. At the hearing in April, 1976, the question of whether the mother was advised regarding her right to an attorney was discussed at length. Counsel for the state told the judge in the presence of the appellant and her attorney:

ERNEST JONES: O.K., our position is, and I realize when you listen to the tape there is no mention of the court ever advising her to her right to an attorney, but the information we had is that she appeared with Mr. Daines, the attorney, on three prior occasions and I have talked to Mr. Daines and he tells me that what had happened was she had decided by the time we got to this termination hearing that she didn't want an attorney that she was just going to go in and give up the child for adoption, and that's the reason he didn't appear cause she told him she didn't want at attorney with her, so . . . Plus there's some indication that when they arrived for the hearing the final hearing for termination there was a large discussion before we ever turned the tape recorder on about her right to an attorney and the fact that if she would have someone here to represent her and the discussion ended up that she didn't want an attorney that she

was here to have her rights as a parent terminated.

\* \* \* \* \* \*

ERNEST JONES: Ya, as I remembered there was a big discussion when she showed up without an attorney and the discussion was that you have a right to an attorney and where is Bill Daines cause he had represented her several times before and as I recall the discussion it ended in "I don't want an attorney, I'm here to terminate my rights as a parent, I have already talked to Bill Daines about it and we have decided to just go ahead with it the way it is." And I keep thinking the court discussed it with her, the people from Division of Family Services discussed it with her, and she said, "I understand what's going on and I just want to terminate my rights."

THE COURT: Well this is certainly compatible with what recollection I have.

\* \* \* \* \* \*

. . . Now I am inclined to, towards this approach to the procedural question. I think that this young lady was advised on prior occasions by prior, by other judicial officers of this court, of her right to be represented by counsel, she was provided counsel, counsel has represented her in other proceedings relating to the custody of the child. I believe from the Mr. Jones comments about those proceedings and my recollection is refreshed additionally and I am convinced that though it doesn't appear on the tape that I did in fact discuss with her the matter of representation by counsel that she did in fact make it clear that she did not want counsel, that she had made up her mind to what she was going to do and that she was in fact, so whether or not she appears on the tape recording, she knew and had been advised and a discussion was made as to, on that occasion relating to this petition of her rights to counsel she (inaudible), voluntarily, and intentionally waived counsel, that she purposely, intentionally represented to this court that she was not acting under

any pressure from anyone, or any promises or representations of anyone, she was fully advised by the court as to the legal consequences of the court entering an order terminating parental rights. . .

It thus appears that the appellant had the advice of counsel and did not want him in court on January 9, 1975, as found by the judge at the hearing held April 22, 1976. Section 55–10–109(3) U.C.A. 1953, Replacement Vol. 6A provides:

> Unless there is an appeal from the order terminating the rights of one or both parents, the order permanently terminates the legal parent-child relationship and all the rights and duties, including residual parental rights and duties, of the parent or parents involved.

And Section 55–10–112, Id. provides:

> An appeal to the Supreme Court may be taken from any order, decree, or judgment of the juvenile court. . . .
> The appeal must be taken *within one month* from the entry of the order, decree or judgment appealed from. [Emphasis added.]

No appeal was ever taken from the order of final deprivation, and the matter cannot be reviewed by the method adopted in this matter.

The natural mother in this case consented to an order of deprivation, and based upon that order the District Court permitted Baby Marie to be adopted some seven months before the petition to vacate was filed in this matter.

This appeal and the proceedings leading up to it might be viewed as an attempt to get money from the adopting parents as well as an effort to belatedly recover the child.

I could concur with the prevailing opinion if the facts were as stated therein. However, since there was ample evidence to support the findings made by the trial court, our duty is to affirm it.[1]

I, therefore, dissent from the main opinion.

CROCKETT, Justice (dissenting):

I concur with the dissent of Justice Ellett, adding some comments in support thereof.

Contests concerning the custody of small children present the distressing necessity of making a choice between difficult alternatives, where whichever way the decision is made some hearts must be wrung with disappointment and sorrow.

Under our established rules, both that burdensome duty and the prerogative rests primarily upon the trial judge; and unless it clearly appears that he abused his discretion, we should not upset his judgment, but resolve doubts in favor thereof.[1] Further, while the rights of contesting adults should be given appropriate consideration, the paramount one should be the welfare of the child.[2]

This little three-year-old girl is in an adoptive home, presumably carefully chosen for that particular placement, where she is wanted and loved. Surely the differences in the prospect of her having a well adjusted and happy life there, as compared to the alternatives, including displacement, reversion to a home with a single parent, and the strong likelihood of a life on welfare, need no more elaboration here.

In order to avoid burdening this case with further exposition on the principles applicable here, I refer to them as set forth in other cases: See *In Re Adoption of D*_____, 122 Utah 525, 252 P.2d 223 and my dissenting opinion in *D*_____ *P*_____ v. *Social Service, etc.,* 19 Utah 2d 311, 431 P.2d 547 and authorities therein cited.

---

1. *Rubey v. Wood*, 13 Utah 2d 285, 373 P.2d 386 (1962); *Stone v. Stone*, 19 Utah 2d 378, 431 P.2d 802 (1967).

1. *Deveraux v. Brown*, 2 Utah 2d 334, 273 P.2d 185, 186; *State in Interest of K*_____ *B*_____, 7 Utah 2d 398, 326 P.2d 395.

2. *Miller v. Miller*, 8 Utah 2d 290, 333 P.2d 945.

It is also important to observe that the adoptive parents were not, and are not, parties to this proceeding, and could not be bound by or affected by the judgment in this case anyway.

For these additional reasons I join in affirming the view taken by the Juvenile Court that, irrespective of mistakes that may have been made in the past, the procedures followed have been adequate for appellant's protection. If we give more than lip service to the fundamental rule that we honor the findings and judgment of the trial court unless there is some persuasive reason to overturn them, I think that the main and controlling considerations with respect to the welfare of Baby Marie demand that the judgment should be affirmed.